THOMAS V. GIRARDI, State Bar No. 36603
tgirardi@girardikeese.com
HOWARD B. MILLER, State Bar No. 31392
hmiller@girardikeese.com
GRAHAM B. LIPPSMITH, State Bar No. 221984
glippsmith@girardikeese.com
GIRARDI │ KEESE
1126 Wilshire Boulevard
Los Angeles, California 90017
Telephone:  (213) 977-0211
Facsimile:  (213) 481-1554

MILORD A. KESHISHIAN, SBN 197835
MILORD & ASSOCIATES, P.C.
2029 Century Park East, Ste. 2100
Los Angeles, CA 90067
Tel:   (310) 226-7878
Fax:   (310) 226-7879
milord@milordlaw.com

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NOVALOGIC, INC., a California corporation,<br><br>               Plaintiff,<br><br>          v.<br><br>ACTIVISION BLIZZARD, a Delaware corporation; ACTIVISION PUBLISHING, a Delaware corporation; VOYETRA TURTLE BEACH, INC., a New York corporation; PENGUIN GROUP (USA), INC., a Delaware corporation; MICROSOFT CORPORATION, a Washington corporation; and DOES 1 through 10,<br><br>               Defendants. | CASE NO. CV12-04011 JFW (SHx)<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS; PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS**<br><br>**REDACTED**_____<br><br>Hon. John F. Walter<br>Date: June 17, 2013<br>Time: 1:30 p.m.<br>Courtroom: 16 |

Pursuant to Rule 56 of *Federal Rules of Civil Procedure* and *Local Rule* 56-1, Plaintiff NovaLogic, Inc. submits the following Responses to Defendants Activision Blizzard, Inc. Activision Publishing, Inc. and Penguin Group (USA)'s Amended Statement of Uncontroverted Facts and Conclusions of Law in Support of their Motion for Partial Summary Judgment.

## PLAINTIFF'S RESPONSES TO
## DEFENDANTS' STATEMENT OF UNDISPUTED FACTS

Facts 1 through 91 below and the responses thereto correspond to the facts and supporting evidence presented in Defendants' Statement of Undisputed Facts.

| DEFENDANTS' PURPORTED UNDISPUTED FACT | EVIDENCE |
|---|---|
| 1.  By most accounts, "Delta Force" was formed in the 1970s and is an elite counter-terrorism unit, specializing in covert missions, such as hostage rescues and raids. | Declaration of James D. Berkley ("Berkley Decl."), ¶¶ 2-9, 14-15, 65, 68-69 & Exs. 5-12, 17-18, 68, 71-72; Declaration of Christopher Butler ("Butler Decl."), ¶¶ 1-6 & Ex. 1 at pp. 4, 10; Declaration of Marc E. Mayer ("Mayer Decl."), ¶ 3 & Ex. 77 (NovaLogic's Responses to First Set of Requests for Admission ["RFAs"] Nos. 50, 58-59). |
| | Objection. Lacks foundation. "The Pentagon still refuses to acknowledge that Delta Force even |

| | |
|---|---|
| | exists." See Def. Ex. 5, p. 332; Def. Ex. 9, p. 231; Def. Ex. 22. [1] Without waiving said objection, Plaintiff responds as follows: Undisputed. |
| 2.  According to books written by former Delta Force members and other accounts, Delta Force was involved in the rescue attempt of American hostages at the U.S. Embassy in Iran in 1979, as well as operations in Grenada, Somalia, Afghanistan, and Iraq. | Berkley Decl., ¶¶ 2-9, 12-15, 20, 22 & Exs. 5-12, 15-18, 23, 25. Objection. Lacks foundation. Without waiving said objection, Plaintiff responds as follows: Undisputed that books written by purported former Delta Force members and other accounts report that "Delta Force was involved in the rescue attempt of American hostages at the U.S. Embassy in Iran in 1979, as well as operations in Grenada, Somalia, Afghanistan, and Iraq." Disputed that "[f]ormer Delta Force members" are members of any such force.  The Pentagon has never officially acknowledged Delta Force's existence nor is the membership in such |

[1] For the Court's convenience and to avoid duplication of exhibits, Plaintiff refers to the page numbers contained within Defense Exhibits 5, 9 and 22, previously lodged with the Court by Defendants in support of their Motion.  *See* ECF No. 34.

PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS;
PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS

| | |
|---|---|
| | a unit public information.<br><br>See Def. Ex. 5, p. 332; Def. Ex. 9, p. 231; Def. Ex. 22. |
| 3.   Delta Force has been known to the public and referred to by its nickname as early as 1983, when the purported founder of Delta Force, Charlie Beckwith, published the book "Delta Force: The U.S. Counter-Terrorist Unit and the Iran Hostage Mission," detailing the history of the unit and its role in the aborted 1980 mission to rescue American hostages in Iran. | Berkley Decl., ¶¶, 2, 16-17 & Exs. 5, 19-20.<br><br>Objection. Lacks foundation. Relevance. Whether "Delta Force has been known to the public and referred to by its nickname as early as 1983, when the purported founder of Delta Force, Charlie Beckwith, published the book "Delta Force: The U.S. Counter-Terrorist Unit and the Iran Hostage Mission," detailing the history of the unit and its role in the aborted 1980 mission to rescue American hostages in Iran" is irrelevant to the determination of the motion for summary judgment. *See* Fed. R. Evid. 401, 403. Without waiving said objection, Plaintiff responds as follows: Undisputed as to the portion of the statement that states "when the purported founder of Delta Force, Charlie Beckwith, published the book "Delta Force: The U.S. Counter- |

PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS;
PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS

| | |
|---|---|
| | Terrorist Unit and the Iran Hostage Mission," detailing the history of the unit and its role in the aborted 1980 mission to rescue American hostages in Iran." <br><br> Disputed as to the portion that reads "Delta Force has been known to the public and referred to by its nickname as early as 1983…" |
| 4.  A website associated with the United States military (www.au.af.mil) offers a 1995 research report discussing the intense Delta Force recruitment process. | Berkley Decl., ¶¶ 19 & Ex. 22. <br><br> Undisputed insofar as the research report also states "[n]ever publicly acknowledged by the Pentagon, the 'Delta Force' has a selection rate often below 12 percent." *See* Def. Ex. 22. |
| 5.  Another website associated with the military offers a recruitment advertisement for "[t]he 1st SFOD-Delta (Delta Force)" described as "the U.S. Army's special operations unit organized for conducting missions that require rapid response with surgical application of a wide variety of unique skills. | Berkley Decl., ¶¶ 26 & Ex. 29. <br><br> Undisputed. |
| 6.  For more than 20 years (well before | Berkley Decl., ¶¶ 2-6, 8, 14, 24, 28, 30- |

PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS;
PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS

| | |
|---|---|
| NovaLogic's alleged use), Delta Force has been symbolized by its distinctive insignia:  a triangle punctuated by a lightning bolt, with a dagger emblazoned in the center (the "Army Logo"). | 35 & Exs. 5-9, 11, 17, 27, 31, 33-38.<br><br>Objection. Lacks foundation. Mischaracterizes Evidence. NovaLogic's marks are for use in conjunction with computer game software and strategy guides. Declaration of Graham B. LippSmith ("LippSmith Dec.") Ex. 2 (NovaLogic 90); Ex. 3 (NovaLogic26, 27, 31). Further, NovaLogic's marks are registered and incontestable. *See* 15 U.S.C. § 1065.<br><br>Without waiving said objection, Plaintiff responds as follows: Disputed. None of these exhibits are official military sources using the "distinctive insignia" to symbolize "Delta Force." Further disputed insofar as Def. Exs 2-4, 17, 27, 31, 33-38 provide no evidence that the "distinctive insignia" is greater than 20 years old. |
| 7.  A 1994 book reported: "A visitor can walk into offices the U.S. Special Operations Command at Tampa and find coffee mugs sporting the secret | Berkley Decl., ¶¶ 6 & Ex. 9 at p. 231.<br><br>Objection. Relevance. Whether "[a] visitor can walk into offices the U.S. |

5

| | |
|---|---|
| Delta Force logo: a kelly green triangle inlaid with a white dagger and another gold triangle." | Special Operations Command at Tampa and find coffee mugs sporting the secret Delta Force logo: a kelly green triangle inlaid with a white dagger and another gold triangle." is irrelevant to the determination of the motion for summary judgment. *See* Fed. R. Evid. 401, 403.<br><br>NovaLogic's marks are for use in conjunction with computer game software and strategy guides. LippSmith Dec. Ex. 2 (NovaLogic 90); Ex. 3 (NovaLogic26, 27, 31). Further, NovaLogic's marks are registered and incontestable. *See* 15 U.S.C. § 1065.<br><br>Without waiving said objection, Plaintiff responds as follows: The same exhibit also states that "[t]he Pentagon still refuses to acknowledge that Delta Force even exists." *See* Def. Ex. 9 at p. 231.<br>Otherwise, Undisputed. |
| 8.  Many dozens, if not hundreds, of products currently are available for purchase depicting the Army Logo, | Berkley Decl., ¶¶ 32-35 & Exs. 35-38.<br><br>Objection. Mischaracterizes evidence. |

PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS;
PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS

| | |
|---|---|
| including mugs, T-shirts, hats, pins, patches, and neckties. | Relevance. Whether "[m]any dozens, if not hundreds, of products currently are available for purchase depicting the Army Logo, including mugs, T-shirts, hats, pins, patches, and neckties" is irrelevant to the determination of the motion for summary judgment. *See* Fed. R. Evid. 401, 403. Without waiving said objection, Plaintiff responds as follows: Undisputed that "products currently are available for purchase depicting the Army Logo, including mugs, T-shirts, hats, pins, patches, and neckties." NovaLogic's marks are for use in conjunction with computer game software and strategy guides. LippSmith Dec. Ex. 2 (NovaLogic 90); Ex. 3 (NovaLogic26, 27, 31).<br><br>Further, NovaLogic's marks are registered and incontestable. *See* 15 U.S.C. § 1065.<br><br>Disputed that there are "hundreds" of such products. |
| 9.  The exploits of Delta Force have | Berkley Decl., ¶¶ 2-9, 11-17, 20-25, 30- |

PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS;
PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS

| | |
|---|---|
| been chronicled in dozens of books, newspaper articles, magazine articles, and other materials.  Many of these also reproduced or discussed the Army Logo. | 31, 36-40 & Exs. 5-12, 14-20, 23-28, 33-34, 39-43.  *See also* Mayer Decl., ¶ 3 & Ex. 77 (NovaLogic Responses to RFAs Nos. 22-25).<br><br>Objection. Compound. Relevance. Whether the exploits of Delta Force of been chronicled in dozens of books, articles and other materials that may or may not have discussed or reproduced the Army Logo is irrelevant to the determination of the motion for summary judgment. *See* Fed. R. Evid. 401, 403.<br>NovaLogic's marks are for use in conjunction with computer game software and strategy guides. LippSmith Dec. Ex. 2 (NovaLogic 90); Ex. 3 (NovaLogic26, 27, 31). Further, NovaLogic's marks are registered and incontestable. *See* 15 U.S.C. § 1065.<br><br>Without waiving said objection, Plaintiff responds as follows: Undisputed that "books, newspaper articles, magazine articles, and other |

PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS;
PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS

| | |
|---|---|
| | materials" have chronicled the actions of a unit referred to as Delta Force. "Many of these also reproduced or discussed the Army Logo."<br><br>Disputed the actions chronicled were necessarily factually correct, were executed by any branch of the U.S. armed forces or occurred at all since "[t]he Pentagon still refuses to acknowledge that Delta Force even exists." See Def. Ex. 5, p. 332; Def. Ex. 9, p. 231; Def. Ex. 22. |
| 10.    In 1983, Beckwith released his book "Delta Force: The U.S. Counter-Terrorist Unit and the Iran Hostage Rescue Mission."  In addition to a 1985 paperback version, Beckwith's book was reissued in 2000 (as "Delta Force: The Army's Elite Counterterrorist Unit," now in its nineteenth printing) and is scheduled to be reissued in May 2013 (as "Delta Force: A Memoir by the Founder of the Military's Most Secretive Special-Operations Unit").  The Army Logo has been depicted on the front cover of these books since at | Berkley Decl., ¶¶ 2, 16-18 & Exs. 5, 19-21.<br><br>Objection. Compound. Relevance. Beckwith's books are irrelevant to the determination of the motion for summary judgment since they were published almost 20 years before NovaLogic registered . See Fed. R. Evid. 401, 403.<br>NovaLogic's marks are for use in conjunction with computer game software and strategy guides. LippSmith Dec. Ex. 81 (NovaLogic |

9

| | |
|---|---|
| least 2000. | 90); Ex. 82 (NovaLogic26, 27, 31). Further, NovaLogic's marks are registered and incontestable. *See* 15 U.S.C. § 1065.<br><br>Without waiving said objection, Plaintiff responds as follows: Undisputed. |
| 11.     On June 17, 1991, <u>Newsweek</u> published a cover story by Douglas C. Waller titled "Secret Warriors," which depicted the Army Logo. | Berkley Decl., ¶ 14 & Ex. 17.<br><br>Objection. Relevance. Whether the Army Logo is depicted for a periodic source is irrelevant for determination of this summary judgment. *See* Fed. R. Evid. 401, 403.<br>NovaLogic's marks are for use in conjunction with computer game software and strategy guides. LippSmith Dec. Ex. 81 (NovaLogic 90); Ex. 82 (NovaLogic26, 27, 31). Further, NovaLogic's marks are registered and incontestable. *See* 15 U.S.C. § 1065.<br><br>Without waiving said objection, Plaintiff responds as follows: Undisputed. |

PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS;
PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS

| | |
|---|---|
| 12.     In 1994 Waller authored "Commandos: The Inside Story of America's Secret Soldiers," in which he noted that "the [Delta Force] has been depicted and idolized in at least a dozen movies and books." | Berkley Decl., ¶ 6 & Ex. 9 at p. 231. Objection. Relevance. Waller's books are irrelevant to the determination of the motion for summary judgment since they were published almost 20 years before NovaLogic registered . *See* Fed. R. Evid. 401, 403. Without waiving said objection, Plaintiff responds as follows: Undisputed. |
| 13.     In 1992, Special Forces veteran Terry Griswold and co-author D.M. Giangreco released "Delta: America's Elite Counterterrorist Force," which depicted the Army Logo on its cover. | Berkley Decl., ¶ 3 & Ex. 6. Undisputed. |
| 14.     In 2000, L.H. "Bucky" Burruss, a founding officer of Delta Force, published a novel set during the 1991 Gulf War titled "Heart of the Storm." Burruss noted that the troops comprising "1st Special Forces Operational Detachment – Delta" are "better known throughout the world as Delta Force," and described a "brass medallion … bearing the combat knife | Berkley Decl., ¶ 27 & Ex. 30 at pp. 191, 242.  *See also id.,* ¶ 50 & Ex. 53. Objection: Compound. Lacks foundation. Each of these exhibits is fictional and cannot be taken to support facts as indisputable. *See* ECF 40-2, p. 66. *See also* ECF 40-6, p. 5. Disputed that L.H. 'Bucky' Burrus was |

| | |
|---|---|
| and triangular lightning bolt of the Delta Force logo." | a founding officer of Delta Force. The Pentagon has never officially acknowledged Delta Force's existence nor is the membership in such a unit public information. See Def. Ex. 5, p. 332; Def. Ex. 9, p. 231; Def. Ex. 22. |
| 15.    In 2002, Representative Frank Wolf put into the United States Congressional Record a <u>Washington Post</u> article referring to the "iconic Delta Force dagger inside a triangular frame…" | Berkley Decl., ¶ 25 & Ex. 28. *See also id.,* ¶ 24 & 27.  Undisputed. |
| 16.    In 2002, former Delta Force soldier Eric Haney authored a book titled "Inside Delta Force: The Story of America's Elite Counterterrorist Unit," recounting the author's experience in Delta Force. The Army Logo has been prominently displayed on the cover of the book's paperback edition and also appears as a graphic device in the book's interior. Haney later became a writer and producer on the CBS television show "The Unit." Since at least 2006, Haney's personal website promoting the book and the television | Berkley Decl., ¶¶ 4-5, 28-29 & Exs. 7-8, 31-32.  Objection. Compound. Without waiving said objection, Plaintiff responds as follows: Undisputed that "Eric Haney authored a book titled "Inside Delta Force: The Story of America's Elite Counterterrorist Unit," recounting the author's experience in Delta Force. The Army Logo has been prominently displayed on the cover of the book's paperback edition and also appears as a |

PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS;
PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS

| | |
|---|---|
| series prominently has featured the Army Logo. | graphic device in the book's interior. Haney later became a writer and producer on the CBS television show "The Unit." Since at least 2006, Haney's personal website promoting the book and the television series prominently has featured the Army Logo." Disputed that Eric Haney was a former Delta Force soldier. The Pentagon has never officially acknowledged Delta Force's existence nor is membership in such a unit public information. See Def. Ex. 5, p. 332; Def. Ex. 9, p. 231; Def. Ex. 22. |
| 17.    In 2008, former Delta Force soldier Pete Blaber wrote and published "The Mission, The Men, and Me: Lessons from a Former Delta Force Commander." "The Mission, The Men, and Me" recounted tales of Delta Force in Colombia, Somalia, Bosnia, Afghanistan, and Iraq. | Berkley Decl., ¶ 7 & Ex. 10. Undisputed that Pete Blaber wrote and published "The Mission, The Men, and Me: Lessons from a Former Delta Force Commander." "The Mission, The Men, and Me" recounted tales of Delta Force in Colombia, Somalia, Bosnia, Afghanistan, and Iraq.<br><br>Disputed that Pete Blaber was a former Delta Force soldier. The Pentagon has never officially acknowledged Delta |

PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS; PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS

| | |
|---|---|
| | Force's existence nor is membership in such a unit public information. See Def. Ex. 5, p. 332; Def. Ex. 9, p. 231; Def. Ex. 22. |
| 18.    In 2008, former Delta Force Operative Dalton Fury wrote "Kill Bin Laden: A Delta Force Commander's Account of the Hunt for the World's Most Wanted Man." The book's cover displayed a "challenge coin" bearing the Army Logo. | Berkley Decl., ¶ 8 & Ex. 11. Objection. Compound. Without waiving said objection, Plaintiff responds as follows: Undisputed that Dalton Fury wrote "Kill Bin Laden: A Delta Force Commander's Account of the Hunt for the World's Most Wanted Man." The book's cover displayed a "challenge coin" bearing the Army Logo.<br><br>Disputed that Dalton Fury was a former Delta Force operative.  The Pentagon has never officially acknowledged Delta Force's existence nor is membership in such a unit public information. See Def. Ex. 5, p. 332; Def. Ex. 9, p. 231; Def. Ex. 22. |
| 19.    The popular CBS news program "60 Minutes" ran a segment featuring Fury and his book in 2009.  CBS featured the Army Logo in its | Berkley Decl., ¶ 30 & Ex. 33.<br><br>Undisputed. |

PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS; PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS

| | |
|---|---|
| introduction to the segment. | |
| 20.     Delta Force and the Army Logo have been extensively popularized in fictional and cinematic works. | Berkley Decl., ¶¶ 10-12, 42-54 & Exs. 13- 15, 45-57.  *See also* SUF Nos. 21-31, *infra.* |
| | Undisputed. |
| 21.     One cinematic work involving the Delta Force was the 1986 film "The Delta Force."  "The Delta Force" tells the story of an airline hostage rescue operation by the Delta Force.  An "army consultant" reputed to be a former member of the U.S. Special Forces is credited on the film. | Berkley Decl., ¶¶ 11, 42 & Exs. 14, 45; *see also* Mayer Decl., Ex. 77 (NovaLogic Response to RFA No. 35). |
| | Objection: Compound. Relevance. "The Delta Force" was released prior to NovaLogic's registration of the Logo and DELTA FORCE® Mark. Further, NovaLogic's trademarks only cover use of the Logo and DELTA FORCE® Mark in videogames and videogame related product. Thus, the existence of such cinematic works is irrelevant to determine the motion for partial summary judgment. |
| 22.     The 1986 motion picture "The Delta Force" depicts not only a fictionalized version of the Delta Force unit and the phrase "Delta Force," but also depicts the Army Logo, including on the side of a U.S. military aircraft at | Berkley Decl., ¶¶ 11, 41 & Exs. 14, 44. |
| | Objection: Relevance. "The Delta Force" was released prior to NovaLogic's registration of the Logo and DELTA FORCE® Mark. Further, |

| | |
|---|---|
| the film's climactic ending. | NovaLogic's trademarks only cover use of the Logo and DELTA FORCE® Mark in videogames and videogame related product. Thus, the existence of such cinematic works is irrelevant to determine the motion for partial summary judgment. |
| 23.    The motion picture "The Delta Force" is reported to have grossed more than $17 million in box office receipts, and was followed by two sequels. | Berkley Decl., ¶¶ 42-44 & Exs. 45-47.<br><br>Objection: Relevance.<br>"The Delta Force" was released prior to NovaLogic's registration of the Logo and DELTA FORCE® Mark. Further, NovaLogic's trademarks only cover use of the Logo and DELTA FORCE® Mark in videogames and videogame related product. Thus, the existence of such cinematic works is irrelevant to determine the motion for partial summary judgment. |
| 24.    Starting in 1997, a series of five films featuring Delta Force were released under the franchise title "Operation Delta Force." | Berkley Decl., ¶ 45 & Ex. 48.<br><br>Objection: Relevance.<br>"The Delta Force" was released prior to NovaLogic's registration of the Logo and DELTA Force® Mark. Further, NovaLogic's trademarks only cover use |

PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS;
PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS

| | |
|---|---|
| | of the Logo and DELTA FORCE® Mark in videogames and videogame related product. Thus, the existence of such cinematic works is irrelevant to determine the motion for partial summary judgment. |
| 25.    A film titled "Delta Force One: The Lost Patrol" apparently was released in 2002. | Berkley Decl., ¶ 46 & Ex. 49. Objection: Relevance. "Delta Force One: The Lost Patrol" was released prior to NovaLogic's registration of the Logo. Further, NovaLogic's trademarks only cover use of the Logo and DELTA FORCE® Mark in videogames and videogame related product. Thus, the existence of such cinematic works is irrelevant to determine the motion for partial summary judgment. |
| 26.    The Ridley Scott film "Black Hawk Down" (based on the bestselling book of the same name), released in 2001, is a depiction of Delta Force in combat during the conflict in Somalia. | Berkley Decl., ¶¶ 12-13 & Exs. 15-16.<br><br>Objection: Relevance. Lacks foundation. Mischaracterizes evidence. "Black Hawk Down" was released prior to NovaLogic's registration of the Logo. Further, NovaLogic's trademarks only cover use of the Logo and DELTA FORCE® Mark in videogames and |

PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS;
PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS

| | |
|---|---|
| | videogame related product. Thus, the existence of such cinematic works is irrelevant to determine the motion for partial summary judgment.  Further, "Black Hawk Down" is a dramatization based on true events depicting Delta Force soldiers acting as part of a rescue mission in Somalia in 1992. |
| 27.     Delta Force appears in numerous works of popular fiction. | Berkley Decl., ¶¶ 10, 47-54 & Exs. 13, 50-57.<br><br>Objection: Relevance. NovaLogic's trademarks only cover use of the Logo and DELTA FORCE® Mark in videogames and videogame related product. Thus, the existence of such works of popular fiction is irrelevant to determine the motion for partial summary judgment. *See* Fed. R. Evid. 401, 403. |
| 28.     Former Delta Force soldier Dalton Fury has written at least two "Delta Force" novels (including "Black Site," and "Tier One Wild").  The covers of these novels prominently depict the triangle/lightning bolt portion of the Army Logo. | Berkley Decl., ¶¶ 10, 47 & Exs. 13, 50.<br><br>Objection: Compound. Lacks foundation. Undisputed that "Dalton Fury has written at least two "Delta Force" novels (including "Black Site," and |

PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS;
PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS

| | |
|---|---|
| | "Tier One Wild"). The covers of these novels prominently depict the triangle/lightning bolt portion of the Army Logo." |
| | Disputed that Dalton Fury is a "[f]ormer Delta Force soldier." The Pentagon has never officially acknowledged Delta Force's existence nor is membership in such a unit public information. See Def. Ex. 5, p. 332; Def. Ex. 9, p. 231; Def. Ex. 22. |
| 29.    In 1991, the romance novel "A Dangerous Man" featured a main character from Delta Force: the book describes the Army Logo shown on a wooden plaque, consisting of a "sword, blade pointed up, overlaid with a triangle…formed by a lightning bolt." | Berkley Decl., ¶ 48 & Ex. 51 at p. 246.  Objection: Relevance. "Black Hawk Down" was released prior to NovaLogic's registration of the Logo and DELTA FORCE® Mark. Further, NovaLogic's trademarks only cover use of the Logo and DELTA FORCE® Mark in videogames and videogame related product. Thus, the existence of such a literary work is irrelevant to determine the motion for partial summary judgment. *See* Fed. R. Evid. 401, 403. |

PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS; PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS

| | |
|---|---|
| 30.    Romance novelist Alexis Grant has authored two novels in a "Men of Delta Force" series. | Berkley Decl., ¶ 49 & Ex. 52.<br><br>Objection: Relevance.<br>The existence of such a literary work is irrelevant to determine the motion for partial summary judgment. *See* Fed. R. Evid. 401, 403. |
| 31.    Other novels that depict or discuss Delta Force are "Deception Point" by Dan Brown, "Rainbow Six," by Tom Clancy," "The Athena Project" by Brad Thor, "A Mission for Delta" by L.H. Burruss, and "Ice Hunt" by James Rollins. | Berkley Decl., ¶¶ 50-54 & Exs. 53-57.<br>Objection: Relevance.<br>NovaLogic's trademarks only cover use of the Logo and DELTA FORCE® Mark in videogames and videogame related product. Thus, the existence of such works of popular fiction is irrelevant to determine the motion for partial summary judgment. *See* Fed. R. Evid. 401, 403. |
| 32.    Delta Force appears or is referenced in board games, tabletop role-playing games, and video games, including the video games "Crysis," "Shadow Ops: Red Mercury," "Act of War: High Treason," and "Spec Ops: The Line." | Berkley Decl., ¶¶ 55-63 & Exs. 58-66.<br><br>Objection: Relevance.<br>NovaLogic's trademarks only cover use of the Logo and DELTA FORCE® Mark in videogames and videogame related product. Thus, the existence of board games and tabletop role-playing games is irrelevant to determine the motion for partial summary judgment. |

PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS;
PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS

| | |
|---|---|
| | *See* Fed. R. Evid. 401, 403. Plaintiff further objects that none of the exhibits cited demonstrate use of the Logo or any alternative form of the Infringing Mark. |
| 33.    In or about 1998, NovaLogic released and marketed the first of a series of military-themed videogames, titled "Delta Force" (the "NovaLogic Games"). | Complaint, ¶ 19<br><br>Undisputed. |
| 34.    NovaLogic has acknowledged that its 1998 game was based upon the activities of the U.S. Army's Delta Force Unit, which NovaLogic admitted was "created in 1979, modeled after the British Special Air Service (SAS)" and is a "highly secretive unit [designed] to serve as an overseas Commando and Counter-Terrorist unit which specialized in Hostage rescue, barricade operations and the nation's most sensitive military operations. ...." | Butler Decl., ¶¶ 1-6 & Ex. 1 at pp. 4, 10-11, 13; Mayer Decl., ¶ 3 & Ex. 77 (NovaLogic Responses to RFAs Nos. 51-52).  *See also* Berkley Decl., ¶¶ 65, 69, 71 & Exs. 68, 72, 74.<br><br><br><br>Undisputed. |
| 35.    "Delta Force" was advertised and marketed as depicting the "real U.S. Army Delta Force" and as including "military simulation features so players will feel as if they are actual members | Butler Decl., ¶¶ 1-6 & Ex. 1 at pp. 4, 6, 8; *see also* Berkley Decl., ¶ 71 & Ex. 74.<br><br><br>Undisputed. |

21

PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS; PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS

| | |
|---|---|
| of Delta Force." | |
| 36.    NovaLogic touted that it relied on the advice of a "former Delta Force Assault Troop Commander" or "Former Delta Force Officer" to imbue the game with "true characteristics of a Delta Force soldier." | Butler Decl., ¶¶ 1-6 & Ex. 1 at pp. 6, 8; Berkley Decl., ¶ 65 & Ex. 68; Mayer Decl. ¶¶ 2-3 & Ex. 75 at p. 4; Ex. 77  (NovaLogic Response to RFA No. 48).<br><br>Undisputed. |
| 37.    NovaLogic has admitted that it used the term "Delta Force" to "depict what it believed was an unofficial and mysterious unit of the United States Army." | Mayer Decl., ¶ 3 & Ex. 77 (NovaLogic Responses to RFAs Nos. 31, 32, 57).<br><br>Undisputed. |
| 38.    NovaLogic released a number of sequels to Delta Force. | Complaint, ¶ 19.<br><br>Undisputed. |
| 39.    Like the original 1998 game, subsequent NovaLogic Games consistently represented that they were based on the "real Delta Force unit." | Butler Decl., ¶¶ 1-6 & Ex. 1 at pp. 10, 16-21; Berkley Decl., ¶¶ 64, 66-68, 70 & Exs. 67, 69-71, 73; Mayer Decl., ¶ 3 & Ex. 77 (NovaLogic Responses to RFAs Nos. 51- 53).  *See also* Mayer Decl., ¶ 2 & Ex. 75; Berkley Decl., ¶ 71 & Ex. 74.<br><br>Undisputed. |
| 40.    In the marketing materials for "Delta Force: Land Warrior," | Butler Decl., ¶¶ 1-6 & Ex. 1 at p. 18; Berkley Decl., ¶ 66 & Ex. 69 at p. 393. |

PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS; PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS

| NovaLogic stated that the player can "take control of the US Army's elite anti-terrorist unit." | *See also* Mayer Decl., ¶ 3 & Ex. 77 (NovaLogic Response to RFA No. 61). Undisputed. |
|---|---|
| 41.     In the marketing materials for Delta Force 2, NovaLogic stated that "[y]ou're a member of the U.S. Army's best-kept secret: the elite SPECIAL OPERATIONS unit known as Delta Force, formed to BATTLE TERRORISM throughout the world." | Butler Decl., ¶¶ 1-6 & Ex. 1 at p. 16; Berkley Decl., ¶¶ 66-67 & Exs. 69-70 at pp. 392, 402. Undisputed. |
| 42.     In the marketing materials for "Delta Force: Task Force Dagger" and "Delta Force: Black Hawk Down – Team Sabre," NovaLogic stated that "[a]s the US army's elite special operations soldiers you are the most potent 'smart weapon' known to man. … Nothing stands in your way." | Butler Decl., ¶¶ 1-6 & Ex. 1 at p. 20; Berkley Decl., ¶¶ 66-67 & Exs. 69-70 at pp. 393-94, 407. Undisputed. |
| 43.     In the marketing materials for "Delta Force: XTreme 2," NovaLogic stated that "[a]s part of Delta Force, the U.S. Army's most secretive and highly trained unit, you have the skills and the firepower to hunt them down and take them out." | Butler Decl., ¶¶ 1-6 & Ex. 1 at p. 21. Undisputed. |
| 44.     A 1999 statement on | Butler Decl., ¶¶ 1-6 & Ex. 1 at p. 13; |

PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS; PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS

| | |
|---|---|
| NovaLogic's website stated that "Delta Force" is based on "actual events" and on "missions [that] real Delta Force operators would be employed to do." | Mayer Decl., ¶ 3 & Ex. 77 (NovaLogic Response to RFA No. 53).<br><br>Undisputed. |
| 45.    A 2001 NovaLogic press release stated that "[t]he real Delta Force unit, on which the [Delta Force] games franchise is based, was originally created in 1979 and modeled after the British Special Air Service (SAS)." | Butler Decl., ¶¶ 1-6 & Ex. 1 at p. 10; *see also* Berkley Decl., ¶ 71 & Ex. 74 at p. 435.<br><br>Undisputed. |
| 46.    The NovaLogic Delta Force Games have been marketed using the Army Logo or a close variant thereof (the "NovaLogic Delta Logo"). | Mayer Decl., ¶¶ 2-3 & Exs. 75, 77 (NovaLogic Responses to RFAs Nos. 13, 15).<br><br>Disputed. There is no official Army Logo.  LippSmith Dec. Ex. 84 (Activ0022974). |
| 47.    Like the Army Logo, the NovaLogic Delta Logo contains a triangle punctuated by a lightning bolt with an upright dagger in the center. | Mayer Decl., ¶ 2 & Ex. 75.<br><br>Disputed. There is no official Army Logo.  LippSmith Dec. Ex. 84 (Activ0022974). |
| 48.    NovaLogic admitted that it did not independently create the NovaLogic Delta Logo, but that it was derived from a pre-existing design (namely, the Army Logo). | Mayer Decl., ¶ 3 & Ex. 77 (NovaLogic Responses to RFAs Nos. 13, 15).<br><br>Objection. Mischaracterizes evidence.  Calls for a legal conclusion. |

PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS;
PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS

| | Disputed that NovaLogic's Delta Logo is based on the Army Logo. |
|---|---|
| 49.     On the NovaLogic website, the NovaLogic Delta Logo is featured one of a set of "Soldier Profiles" for ten celebrated and actually existing organizations around the world (including not only Delta Force, but also the Green Berets, the CIA, and the British SAS), each describing the organization alongside a depiction of its associated insignia. | Berkley Decl., ¶ 64 & Ex. 67.<br><br>Undisputed. |
| 50.     The Delta Force games display the title "DELTA FORCE" (in all capital letters), followed by the subtitle (*e.g.*, "Xtreme," "Urban Warfare"), with NovaLogic prominently identified as the publisher. | Mayer Decl., ¶ 2 & Ex. 75; Berkley Decl., ¶¶ 66-67 & Exs. 69-70.<br><br>Undisputed. |
| 51.     Activision is a video game publisher, engaged in the business of developing, financing, producing, marketing and distributing high-quality computer software games. | Declaration of Michael Condrey ("Condrey Decl."), ¶ 2.<br><br>Undisputed. |
| 52.     Activision is the publisher of the "Call of Duty" series of video games. The "Call of Duty" games are military action/military fantasy games, in which | Condrey Decl., ¶ 3 & Ex. 2.<br><br>Undisputed. |

PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS;
PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS

| | |
|---|---|
| the player assumes control of a military soldier and fights against computer- or human-controlled opponents across a variety of computer-generated battlefields. | |
| 53.    The original Call of Duty was released in 2003, and was followed by Call of Duty 2 in 2005 and Call of Duty 3 in 2006.  In 2007, Activision released the first of its "Call of Duty: Modern Warfare" series of games ("Call of Duty 4: Modern Warfare").  Activision subsequently released "Call of Duty: Modern Warfare 2" in 2009 and "Call of Duty: Modern Warfare 3" ("MW3") in 2011. | Condrey Decl., ¶ 3 & Ex. 2.<br><br>Objection. Compound.<br>Without waiving said objection, Plaintiff responds as follows:<br>Undisputed. |
| 54.    The "Call of Duty: Modern Warfare" games take place in the near-future and place players in the role of modern-day soldiers involved in high-risk combat operations throughout the world. | Condrey Decl., ¶ 3 & Ex. 2.<br><br>Undisputed. |
| 55.    One author has commented that "[M]aybe the most compelling and wide-reaching depictions of special ops today are not in movies or TV but in that 21st-century medium, the first- | Berkley Decl., ¶ 9 & Ex. 12 at p. 95.<br><br>Undisputed. |

26

| | |
|---|---|
| person shooter videogame – like the Call of Duty series (*Modern Warfare* and *Black Ops*)…". | |
| 56.   MW3 was released in 2011 for the XBox 360, PlayStation 3, and Wii consoles, and for Windows personal computers. | Condrey Decl., ¶ 5 & Ex. 2.  Undisputed. |
| 57.   MW3 is a military adventure that takes place in the year 2016.  In this hypothetical near-future, the U.S. is at war with Russia and World War III is imminent.  Meanwhile, a terrorist group, led by villain Vladmir Makorov, has obtained access to Russian nuclear weapons and threatens to destroy the Western world.  MW3 tells the story of a group of elite international soldiers tasked with a variety of high-risk missions to save the world and stop Makorov, such as securing a radio tower in New York, rescuing the U.S. vice president in Germany, infiltrating a hotel in Prague, stopping a kidnapping plot in Siberia, and ultimately capturing Makorov in the Arabian Peninsula. | Condrey Decl., ¶ 7 & Ex. 2.  Objection. Compound. Without waiving said objection, Plaintiff responds as follows: Undisputed. |
| 58.   MW3 is a fully cinematic experience, featuring story, dialog, | Condrey Decl., ¶ 10 & Ex. 2. |

PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS;
PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS

| | |
|---|---|
| music, special effects, and all of the other elements one would expect from a big-budget entertainment franchise. | Undisputed. |
| 59.   MW3 is a realistic and convincing portrayal of modern combat operations.  Weapons are generally as faithful as possible to their real-world counterparts.  Locations around the world (such as New York and Paris) are rendered in detail are readily identifiable (e.g., by using landmarks modeled to look like the real New York Stock Exchange and the Eiffel Tower).  Real-world vehicles are used.  Additionally, the names and logos of actual combat forces and troops are used, such as the U.S. Army Rangers and the British Special Air Service ("SAS"). | Condrey Decl., ¶ 9 & Ex. 2.<br><br>Objection. Compound. Without waiving said objection, Plaintiff responds as follows: Undisputed. |
| 60.   Like other games in the "Call of Duty" series, the single-player campaign of MW3 is divided into discrete "missions" or "levels," and the player's perspective shifts between a few main characters from mission to mission. | Condrey Decl., ¶ 8 & Ex. 2.<br><br>Objection. Compound. Without waiving said objection, Plaintiff responds as follows: Undisputed. |
| 61.   MW3's main characters are | Condrey Decl., ¶ 8 & Ex. 2; Declaration |

PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS;
PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS

| | |
|---|---|
| special forces operatives, including members of the United States Delta Force; members of the British Special Air Service ("SAS"); and agents of the Russian FSO (Federal Protective Service).  Each of these characters plays a part in the overall story, which unfolds during the course of the game. | of Omer Salik ("Salik Decl."), Ex. 3.<br><br>Objection. Compound. Without waiving said objection, Plaintiff responds as follows: Undisputed. |
| 62.    In seven out of 16 missions, MW3 players play a member of a Delta Force team.  These missions include an assault on the New York Stock Exchange, a fight on the streets of Paris, and a rescue operation of the Russian president in a Siberian diamond mine. | Condrey Decl., ¶ 8 & Ex. 2; Salik Decl., Ex. 3.<br><br>Undisputed. |
| 63.    Delta Force first is introduced in a mission titled "Black Tuesday."  In the introductory sequence to that mission, senior Department of Defense officials explain that the Russians are jamming a satellite signal and use satellite and electronic imaging to analyze which U.S. military units are closest to the jamming tower.  After reviewing the locations of an Army Ranger, Marines, and Delta Force team, the U.S. Central Command contacts the | Condrey Decl., Ex. 2; Salik Decl., Ex. 3.<br><br>Objection. Compound. Without waiving said objection, Plaintiff responds as follows: Undisputed. |

PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS; PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS

| | |
|---|---|
| Delta Force team and instructs its commander, Sgt. Derek Frost, to disable the tower.  Players then take control of Frost and lead him and his team to their objective. | |
| 64.     Before each MW3 mission, the player is given a mission briefing, and then the logo of the special forces unit featured in the upcoming mission is displayed.  Each special forces unit has its own unique circular logo, derived from the actual military logos used by or associated with the unit.  For example, the Russian FSO logo is a red star with the Soviet hammer-and-sickle inside, and the British SAS logo is a set of wings with a downward-pointed dagger in the center. | Condrey Decl., ¶ 12 & Ex. 2; Declaration of Omer Salik, Ex. 3.<br><br>Objection. Compound. Without waiving said objection, Plaintiff responds as follows: Undisputed that "[b]efore each MW3 mission, the player is given a mission briefing, and then the logo of the special forces unit featured in the upcoming mission is displayed.  Each special forces unit has its own unique circular logo."  Also undisputed that the "Russian FSO logo is a red star with the Soviet hammer-and-sickle inside, and the British SAS logo is a set of wings with a downward-pointed dagger in the center."<br>Disputed that each unique circular logo is "derived from the actual military logos used by or associated with the unit." |

PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS; PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS

| | |
|---|---|
| 65.    At the start of each mission, the game displays the mission's title, the date and time, the name of the soldier the player is about to assume control of, the special forces team involved, and the mission's geographic location. | Condrey Decl., ¶ 12 & Ex. 2; Salik Decl., Ex. 3.<br><br>Undisputed. |
| 66.    Before missions featuring Frost and his Delta Force unit, a Delta Force logo (the "MW3 Delta Logo") is briefly displayed. | Condrey Decl., ¶ 12 & Ex. 2; Salik Decl., Ex. 3.<br><br>Undisputed. |
| 67.    The MW3 Delta Logo is comprised of a triangle punctuated by a lightning bolt, with an upright knife in the center of the triangle, encased within a circle bearing the words "Delta Force – United States Army."  The MW3 Delta Logo evokes the Army Logo but modifies the design in some respects, including by repositioning the triangle lightning-bolt image, replacing the dagger with a knife, and including the words "Delta Force – United States Army" along the edge of the seal. | Condrey Decl., ¶ 12 & Ex. 2; Salik Decl., Ex. 3.<br><br>Objection. Compound. Without waiving said objection, Plaintiff responds as follows: Undisputed to the extent the Army Logo is not a logo of any unit officially acknowledged by the Pentagon. |
| 68.    The MW3 Delta Insignia is different from the Army Logo and NovaLogic Delta Logo, including because (unlike the Army Logo), it | *Compare* Condrey Decl., Ex. 2 and Salik Decl., Ex. 3 *with* Berkley Decl., Exs. 5-6, 17 and *with* Mayer Decl., Ex. 75. |

PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS; PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS

| | |
|---|---|
| contains an express reference to the U.S. Army. | Undisputed to the extent the Army Logo is not a logo of any unit officially acknowledged by the Pentagon. |
| 69.    The words "Delta Force" and the MW3 Delta Logo appear for only a few minutes of the 7-8 hour campaign experience. | Condrey Decl., Ex. 2.<br><br>Objection. Lacks foundation. Mischaracterizes evidence. Without waiving said objection, Plaintiff responds as follows: Disputed to the extent that the amount of time the MW3 Delta Logo appears is a function of the player's rate of play. |
| 70.    In addition to the single player story-driven campaign, MW3 includes a multiplayer mode, in which the player fights against or alongside other players within a computer-generated battlefield (or "map"). | Condrey Decl., ¶ 13 & Ex. 2.<br><br>Undisputed. |
| 71.    MW3 shipped with 16 multiplayer maps, each of which pits two military units against each other. The special forces teams participating in the match are pre-designated, based logically upon the nature and location of the map (and, in some cases, the map's relationship to the single-player | Condrey Decl., ¶ 14 & Ex. 2.<br><br>Objection. Compound. Without waiving said objection, Plaintiff responds as follows: Undisputed. |

PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS;
PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS

| | |
|---|---|
| story).  For example, the "Bakaara" map, which depicts an African city, pits the "Africa Militia" against the "PMC" (Private Military Company). | |
| 72.     When a player joins a multiplayer match, he or she is assigned to a team, while a screen displays a list of the teams and their logos, along with the names of the players who have selected each team.  At the start of the match, the name of the player's team and its logo is displayed again (to remind players which team they are on).  Finally, at the end of the match, the names and logos of the two teams again are displayed, along with the final score for the match.  In certain game types, flags and weapons appear on the battlefield that bear the insignia of the two competing teams.  Additionally, in a multiplayer mode called "Special Ops," the player can call in computer-controlled Delta Force teammates to assist on the battlefield. | Condrey Decl., ¶¶ 15, 17 & Ex. 2; Salik Decl., Ex. 3.<br><br>Objection. Compound. Without waiving said objection, Plaintiff responds as follows: Undisputed. |
| 73.     Seven multiplayer maps place the Delta Force against the Russian Spetsnaz (special forces).  These maps | Condrey Decl., ¶ 16 & Ex. 2.<br><br>Objection. Compound. Without |

| | |
|---|---|
| generally depict locations that are related to U.S./Russian conflicts in the single-player campaign, such as in New York City, Europe, and Siberia.  Like the other multiplayer maps, in these seven maps the words "Delta Force" and the MW3 Delta Logo are displayed (along with the Russian Spetsnaz name and logo) during the matchmaking process and at the end of the match as part of the scoreboard.  Additionally, if the player has elected to play on the Delta Force team, the words "Delta Force" and the MW3 Delta Logo are displayed at the beginning of the match (by contrast, if the player has elected to play on the Spetsnaz team, the word "Spetsnaz" and the Spetsnaz logo are displayed.) | waiving said objection, Plaintiff responds as follows: Undisputed. |
| 74.     The words "Delta Force" and the MW3 Delta Logo appear for only a short time in connection with each multiplayer match. | Condrey Decl., ¶¶ 15-16 & Ex. 2<br><br>Undisputed. |
| 75.     MW3 is filled with logos and symbols, including the logos of military special ops units (such as the SAS and Task Force 141), the logos of | Condrey Decl., ¶ 11 & Ex. 2; Salik Decl., Ex. 3.<br><br>Objection. Relevance. |

PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS;
PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS

| | |
|---|---|
| government branches such as the Department of Defense, and well-known symbols such the international symbols for biohazard or nuclear materials. | NovaLogic's trademarks only cover use of the Logo and DELTA FORCE® Mark in videogames and videogame related product. Thus, the use of any other marks is irrelevant to determine the motion for partial summary judgment.. *See* Fed. R. Evid. 401, 403.<br><br>Without waiving said objection, Plaintiff responds as follows: Undisputed. |
| 76.     Neither the words "Delta Force" nor the MW3 Delta Logo are used in MW3's title, on the game's packaging, or in advertising for the game. | Condrey Decl., Ex. 2.<br><br>Undisputed. |
| 77.     No reference is made in MW3 (or any MW3 materials) to NovaLogic or any of its games. | Condrey Decl., Ex. 2; Mayer Decl., ¶ 3 & Ex. 77 (NovaLogic Responses to RFAs Nos. 88-91).<br><br>Objection. Mischaracterizes evidence. Without waiving said objection, Plaintiff responds as follows: Undisputed. |
| 78.     MW3 does not purport to be a sequel, remake, or reimagining of NovaLogic's "Delta Force" series. | Condrey Decl., Ex. 2.<br><br>Undisputed. |
| 79.     MW3 does not claim or suggest | Condrey Decl., Ex. 2; Mayer Decl., ¶ 3 |

PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS; PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS

| | |
|---|---|
| in any manner that it was made with the participation or endorsement of NovaLogic. | & Ex. 77 (NovaLogic Response to RFA No. 88).<br><br>Disputed. Defendants' use of the Infringing Mark and DELTA FORCE® Mark is likely to cause confusion for potential consumers. *See generally* Plaintiff's Opposition to Defendants' Motion for Partial Summary Judgment (Plaintiff's Opp.). |
| 80.    MW3's box is clear as to its origin and source, as it prominently displays the title "CALL OF DUTY: MW3," identifies its makers as "Activision" (and its affiliated studios "Infinity Ward," and "Sledgehammer Games") and uses a distinctive white-and-green color scheme. | Condrey Decl., Ex. 2; Mayer Decl., ¶ 3 & Ex. 77 (NovaLogic Response to RFA No. 92).<br><br>Undisputed. |
| 81.    The box for MW3 explicitly references the earlier "Call of Duty: Modern Warfare Games," touting that "The Best-Selling Franchise in XBox 360 History Is Back." | Condrey Decl., Ex. 2.<br><br>Undisputed. |
| 82.    BradyGames, a division of Penguin (USA) Inc. ("Brady") is a publisher of high-quality video game strategy guides. | Declaration of Timothy Fitzpatrick ("Fitzpatrick Decl."), ¶ 2-3.<br><br>Undisputed. |

PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS;
PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS

| 83.    In 2011, pursuant to a license from Activision, Brady published the "BradyGames Signature Series Guide" for MW3 (the "MW3 Guide). | Fitzpatrick Decl., ¶¶ 4-6 & Ex. 4.

Undisputed. |
|---|---|
| 84.    The MW3 Guide is a 350-page book featuring a detailed walkthrough of the game, including illustrations of maps, lists of objectives, tactics and strategies, weapon statistics, the locations of objects and hidden items, and thousands of in-game screenshots. | Fitzpatrick Decl., ¶ 7 & Ex. 4.

Undisputed. |
| 85.    The only use of the Delta Force name and MW3 Delta Insignia in the MW3 Guide is in the description of each of the Delta Force missions, beneath the title of the mission is a tiny image of the MW3 Delta Insignia and the word "Delta Force."  The words "Delta Force" and the MW3 Delta Logo appear on six pages of the 350-page guidebook, and the single word "Delta" appears on seven pages. | Fitzpatrick Decl., ¶¶ 7-8 & Ex. 4.

Objection. Mischaracterizes Evidence. Without waiving said objection, Plaintiff responds as follows: Disputed. The Infringing Logo appears in multiple forms on seven pages of the guidebook. The seventh page is in advertisement for Third Party Defendant Turtle Beach's headphones. On that page, the Infringing Logo is used five times alone. Since this Infringing Logo is the by-product of Turtle Beach's license with Defendant Activision, it is relevant for the purposes of this opposition. *See* Def Ex. 4. *See also* Plaintiff's Opp. |

PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS;
PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS

| | |
|---|---|
| 86.    The MW3 Delta Logo is depicted only inside the MW3 Guide, only in connection with the Delta Force missions, and is extremely small, serving a descriptive function.  The MW3 Delta Logo is used logically and artfully in the context of the book. | Fitzpatrick Decl., ¶ 9 & Ex. 4.  Objection. Mischaracterizes Evidence. Without waiving said objection, Plaintiff responds as follows: Disputed. The Infringing Logo appears in multiple forms on seven pages of the guidebook. The seventh page is in advertisement for Third Party Defendant Turtle Beach's headphones. On that page, the Infringing Logo is used five times alone. Since this Infringing Logo is the by-product of Turtle Beach's license with Defendant Activision, it is relevant for the purposes of this opposition. *See* Def Ex. 4. *See also* Plaintiff's Opp. |
| 87.    The MW3 Guide does not use the "Delta Force" name or the MW3 Delta Logo on its cover, except that the back cover depicts a sample page from the book reflecting one of the Delta Force missions. | Fitzpatrick Decl., ¶ 7 & Ex. 4.  Undisputed. |
| 88.    The MW3 Guide does not reference NovaLogic or its "Delta Force" franchise; nor does it suggest any affiliation or relationship with NovaLogic. | Fitzpatrick Decl., ¶ 7 & Ex. 4; Mayer Decl., ¶ 3 & Ex. 77 (NovaLogic Response to RFA No. 91).  Objection. Mischaracterizes Evidence. |

PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS;
PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS

| | |
|---|---|
| | Without waiving said objection, Plaintiff responds as follows: Disputed. The Infringing Logo appears in multiple forms on seven pages of the guidebook. The seventh page is in advertisement for Third Party Defendant Turtle Beach's headphones. On that page, the Infringing Logo is used five times alone. Since this Infringing Logo is the by-product of Turtle Beach's license with Defendant Activision, it is relevant for the purposes of this opposition. *See* Def Ex. 4. *See also* Plaintiff's Opp. |
| 89.    The MW3 Guide clearly identifies that it is a guide for MW3, contains the MW3 cover image on its cover, and prominently displays the Activision, Infinity Ward, and Sledgehammer Games names and logos on its front and back cover. | Fitzpatrick Decl., ¶ 7 & Ex. 4; Mayer Decl., ¶ 3 & Ex. 77 (NovaLogic Responses to RFAs Nos. 95-96).

Undisputed. |
| 90.    NovaLogic has admitted that it has no evidence that any person purchased MW3 or the MW3 Guide as a result of a mistaken belief that such products were affiliated with, sponsored by, or otherwise related to NovaLogic's Delta Force games. | Mayer Decl., ¶ 3 & Ex. 77 (NovaLogic Responses to RFAs Nos. 105, 108).

Undisputed. |

PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS; PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS

| 91.  NovaLogic has not produced any evidence that any consumer was misled by Activision into believing that NovaLogic was the source of MW3 or was affiliated with or sponsored the game. | Mayer Decl., ¶ 3 & Ex. 76.<br><br>Disputed. Plaintiff has received communications from consumers expressing confusion as to whether NovaLogic has sold its intellectual property rights to Activision.  *See e.g.,* Declaration of John Garcia ("Garcia Dec.") Ex. 1. |

## CONCLUSIONS OF LAW

| 1.  "In cases involving free speech, a speedy resolution is desirable because protracted litigation may chill the exercise of First Amendment rights. For that reason, summary judgment is a favored remedy in free speech cases." | Kirby v. Sega of America, Inc., 144 Cal. App. 4th 47, 54 607 (2006).<br><br>Disputed.<br>"Defendant[s] simply cannot distill First Amendment concerns from the traditional framework in which courts determine the likelihood of confusion under the Lanham Act."  *No Fear, Inc. v. Imagine Films, Inc.*, 930 F. Supp. 1381, 1383-84 (C.D. Cal. 1995) (citing *Anheuser–Busch, Inc. v. Balducci Publications,* 28 F.3d 769, 773 (8th Cir.1994), *cert. denied,* 513 U.S. 1112, 1115 (1995)). |

PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS; PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS

| | |
|---|---|
| 2.     Courts in this District and have granted summary judgment for the defendant on cases involving the interplay of the Lanham Act and First Amendment. | E.S.S. Entertainment 2000 v. Rock Star Videos, 547 F.3d 1095, 1099 (9th Cir. 2008); Roxbury Entertainment v. Penthouse Media Group, 669 F. Supp. 2d 1170 (C.D. Cal. 2009). |
| | Undisputed. |
| 3.     Trademark rights do not entitle the owner to quash an unauthorized use of the mark by another who is communicating ideas or expressing points of view.  Otherwise, trademark rights would grow to encroach upon the zone protected by the First Amendment." | Mattel, Inc. v. MCA Records, Inc., 296 F.3d 894, 900 (9th Cir. 2002).

Undisputed. |
| 4.     The First Amendment provides a complete defense to Lanham Act claims involving artistic works. | Roxbury, 669 F. Supp. 2d at 1170.

Undisputed. |
| 5.     Video games such as MW3 are core speech protected by the First Amendment. | Brown v. Entertainment Merchants Association, 131 S. Ct. 2729, 2733, 180 L.Ed.2d 708 (2011); Kirby, 144 Cal. App. 4th at 58; Interactive Digital Software Ass'n v. St. Louis Co., Mo., 329 F.3d 954, 957 (8th Cir. 2003); Brown v. Electronic Arts, No. 2:09-cv-01598, 2009 WL 8763151, at *4 (C.D. Cal. Sept. 23, 2009). |

PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS; PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS

| | |
|---|---|
| | Undisputed. |
| 6.      Courts in this Circuit evaluate trademark claims involving expressive works using the test articulated in <u>Rogers v. Grimaldi</u>, 875 F.2d 994 (2d Cir. 1989). | <u>E.S.S.</u>, 547 F.3d at 1099 (9th Cir. 2008); <u>Mattel</u>, 296 F.3d at 902.<br><br>Undisputed. |
| 7.      Under the <u>Rogers</u> test, "an artistic work's use of a trademark that otherwise would violate the Lanham Act is not actionable 'unless [1] the [use of the mark] has no artistic relevance to the underlying work whatsoever, or, [2] if it has some artistic relevance, unless [it] explicitly misleads as to the source or the content of the work.'" | <u>E.S.S.</u> 547 F.3d at 1099.<br><br>Undisputed. |
| 8.      Only the use of a trademark with "no artistic relevance to the underlying work whatsoever'" does not merit First Amendment protection.  In other words, "[t]he level of relevance merely must be above zero." | <u>E.S.S.</u>, 547 F.3d at 1100; <u>Rogers</u>, 875 F.2d at 999. <u>Roxbury</u>, 669 F. Supp. 2d at 1170<br><br>Disputed.<br>Under the <u>Rogers</u> test, "an artistic work's use of a trademark that otherwise would violate the Lanham Act is not actionable 'unless [1] the [use of the mark] has no artistic relevance to the underlying work whatsoever, or, [2] |

PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS;
PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS

| | |
|---|---|
| | if it has some artistic relevance, unless [it] explicitly misleads as to the source or the content of the work.'" <u>E.S.S.</u> 547 F.3d at 1099. |
| 9.      To be 'explicitly misleading,' "the defendant's work must make some **affirmative statement** of the plaintiff's sponsorship or endorsement, beyond the mere use of plaintiff's name or other characteristic." | <u>Dillinger LLC v. Electronic Arts Inc.</u>, No. 09-cv-1236, 2011 WL 2457678, at *6 (S.D. Ind. June 16, 2011) (emphasis added), <u>citing</u> <u>Rogers</u>, 875 F.2d at 1001. |
| | Disputed. |
| | Neither *Rogers* nor any case in the Ninth Circuit has ever defined "explicitly misleading" as requiring an "affirmative misstatement."  *See* 875 F. 2d at 1001; *see e.g., E.S.S.*, 547 F.3d at 1100. |
| | *Rogers'* "limit[ed] construction [does] not apply to misleading titles that are confusingly similar to other titles. The public interest in sparing consumers this type of confusion outweighs the *slight* public interest in permitting authors to use such titles." 875 F 2d at 999 n.5 (emphasis added). "Likelihood of confusion" is the basic test for both common law trademark infringement and federal statutory trademark |

43

| | |
|---|---|
| | infringement." *Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1403 (9th Cir. 1997) (quoting 3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition,* § 23.01[1] (rev. ed. 1994)). |
| 10.    The "mere use, without more, is insufficient to make the use explicitly misleading." | <u>Roxbury</u>, 669 F. Supp. 2d at 1176; <u>E.S.S.</u>, 547 F.3d at 1100.<br><br>Disputed.<br>To determine[e] whether the title explicitly misleads consumers in the Ninth Circuit, courts apply the *Sleekcraft* likelihood of confusion factors. *See e.g., id.*; *Toho Co., Ltd. v. William Morrow & Co., Inc.,* 33 F.Supp 2d 1206, 1212 n. 1 (C.D. Cal. 1998). Otherwise, Undisputed. |
| 11.    The First Amendment defense applies equally to state law trademark claims. | <u>E.S.S.</u>, 547 F.3d at 1101<br><br>Undisputed. |

## **PLAINTIFF'S STATEMENT OF ADDITIONAL UNDISPUTED FACTS**

| | |
|---|---|
| 92.    Plaintiff NovaLogic is a developer and global publisher of | Declaration of John Garcia ("Garcia Dec.") ¶ 2. |

| | |
|---|---|
| computer and video games for consoles such as PlayStation and Xbox. | |
| 93.     NovaLogic has worked with the United States military and firms including Boeing, Sikorsky and Lockheed Martin to develop software for entertainment and military applications. | Garcia Dec. ¶ 3. |
| 94.     In 1998, NovaLogic developed its first version of *Delta Force*, a military first person shooter game. | Garcia Dec. ¶ 4; Declaration of Graham B. LippSmith ("LippSmith Dec.") Ex. 1 (NOVALOGIC123-124) |
| 95.     Approximately ten versions of *Delta Force* have been published since its original release, grossing over $150 million in worldwide sales. | Garcia Dec. ¶ 5. |
| 96.     *Delta Force* pioneered many innovations which are now considered standard for the first person shooter game genre, including use of military livery in large open environments and in large-scale Internet multiplayer engagements. | Garcia Dec. ¶ 6. |
| 97.     NovaLogic continues to develop new versions of the *Delta Force* series. | Garcia Dec. ¶ 7. |
| 98.     In 1999, NovaLogic registered a word mark on the text: "DELTA FORCE" (U.S. Reg. 2,302,869) (the | LippSmith Dec. Ex. 81. |

PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS;
PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS

| | |
|---|---|
| "Delta Force® Mark"). | |
| 99.    In 2003, NovaLogic registered a design mark on the Logo (U.S. Reg. No. 2,704,298) (the "Logo"). | LippSmith Dec. Ex. 82. |
| 100.   The Logo consists of a delta symbol with a vertical lightning rod superimposed onto a dagger. | LippSmith Dec. Ex. 82. |
| 101.   The Logo and Delta Force® Mark are used in connection with computer and video game software, CD-ROMs, and game accessories such as strategy guides. | LippSmith Dec. Exs. 81, 82 (NOVALOGIC26, 27, 31, 90) |
| 102.   NovaLogic owns both registrations which are in full force and effect and have become incontestable under 15 U.S.C. §§ 1058, 1059, 1065. | LippSmith Dec. Exs. 81, 82 (NOVALOGIC2, 53) |
| 103.   There is no acknowledged unit of the U.S. Army called Delta Force. | Defendants' Exhibits in support of Motion for Partial Summary Judgment ("Def. Ex.") 5, p. 332. |
| 104.   In the epilogue of the purported founder of Delta Force's book, the very first line emphatically states "Delta Force doesn't exist." | Def. Ex. 5, p. 332. |
| 105.   A branch of the Army's Special Operations is known as 1st Special Forces Operational Detachment Delta ("1st SFOD-D"). | Def. Ex. 5, p. 348; Ex. 7, p. 179. |

PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS;
PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS

| | |
|---|---|
| 106.   In addition to denying that the any unit called Delta Force officially exists, the U.S. Army does not claim ownership to either the Delta Force name or the Logo. | LippSmith Dec. Ex. 83 (NOVALOGIC179); LippSmith Dec. Ex. 84 (Activ22974); *see also* Def. Ex. 5, p. 332; Def. Ex. 9, p. 231; Def. Ex. 22. |
| 107.   In 2005, Vivendi Games, an entity that merged with Activision, agreed to license for a limited period all intellectual property brands owned by NovaLogic, including the Logo, for use on wireless devices. | LippSmith Dec. Ex. 85 (NOVALOGIC 000049657, 49664) |
| 108.   In the letter of intent between the parties, "Intellectual Property Brand" is defined as "name, titles, characters, art and sound assets, stories and other intellectual properties which comprise the distinctive look and feel of each of NovaLogic's game franchises, including but not limited to Delta Force..." | LippSmith Dec. Ex. 85 (NOVALOGIC 000049642-49664) |
| 109.   "Licensed Property" is defined therein as "All Intellectual Property Brands owned or controlled by NovaLogic, including but not limited to Delta Force..." | LippSmith Dec. Ex. 85 (NOVALOGIC 000049642-49664) |
| 110.   In addition to a $750,000 advance, the license guaranteed a 30 | LippSmith Dec. Ex. 85 (NOVALOGIC 000049664) |

PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS;
PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS

| | |
|---|---|
| percent royalty of all licensee revenue. | |
| 111.   In 2008, Activision ended this contractual relationship when Vivendi Games exited the mobile publishing business. | LippSmith Dec. Ex. 85 (NOVALOGIC 000049648) |
| 112.   Nonetheless, Activision had notice of NovaLogic's trademark rights since at least 2005 and even after 2008 Defendant Activision Blizzard continued to pay royalties for using NovaLogic's intellectual property including the Logo and Delta Force® Mark at a credited rate of 30 percent royalty until June 2009. | LippSmith Dec. Ex. 85 (NOVALOGIC 000049642-49664) |
| 113.   Activision credited royalties to NovaLogic on Activision's own letterhead for Delta Force and Delta Force Black Hawk Down. | LippSmith Dec. Ex. 86 (NOVALOGIC 000049642-49647) |
| 114.   In addition to Activision's direct infringement of NovaLogic's marks within the *Call of Duty: Modern Warfare 3* video game ("*MW3*"), ██████████ ██████████ ██████████ ██████████ ██████████ | LippSmith Dec. Ex. 84 ██████████████ ████████ |



| | |
|---|---|
| **117.** The Xbox 360 containing the Infringing Mark was the only Xbox 360 Microsoft released in conjunction with *MW3*. | Garcia Dec. ¶ 8, Ex. 76 (NOVALOGIC 000049702) |
| **118.** The Infringing Mark appears on the outside packaging, as well as on the console itself, as the primary mark identifying the Bundle's affiliation with *MW3*. | Garcia Dec. ¶ 8, Ex. 76 (NOVALOGIC 000049702) |

PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS; PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS

| | |
|---|---|
| ███████████████ | |
| 120. ████████████████ | LippSmith Dec. Ex. 87 (VTB1-4) |
| 121.   Turtle Beach released a broad series of limited edition headsets prominently displaying the Infringing Mark on the outside of each headphone as the primary mark identifying *MW3*. | LippSmith Dec. Ex. 87 (VTB1-4) |
| 122.   Turtle Beach only created headsets containing the Infringing Mark in conjunction with *MW3*. | LippSmith Dec. Ex. 87 (VTB1-4); Declaration of Timothy Fitzpatrick in support of Defendants' Motion for Partial Summary Judgment ("Fitzpatrick Dec."), Ex. 4 (Brady000001, p. 351) |
| 123.   Additionally, the Infringing Mark is displayed on the outside of the packaging and visible through the clear plastic cover as the primary mark identifying *MW3*. | LippSmith Dec. Ex. 87 (VTB1-4) |
| 124. ████████████████ | ████████████████ |

PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS;
PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS



| | |
|---|---|
| 125. ████████ | Fitzpatrick Dec., Ex. 4 (Brady000001, p. 351); LippSmith Dec. Ex. 84 ████████ |
| 126. ████████ | Fitzpatrick Dec., Ex. 4 (Brady000001, p. 351); LippSmith Dec. Ex. 84 |
| 127.   The Infringing Mark appears six times within the Guide as part of game screenshots of *MW3*. | Fitzpatrick Dec., Ex. 4 (Brady000001, pp. 10, 19, 60, 73, 80, 119, 351). |
| 128.   The Infringing Mark also prominently appears several times in a full-page color advertisement for the Turtle Beach headsets. | Fitzpatrick Dec., Ex. 4 (Brady000001, pp. 10, 19, 60, 73, 80, 119, 351). |
| 129. ████████ | ████████ |
| 130.   Defendants' prominent use of the Infringing Mark was part of a clear effort to co-brand *MW3* with each of the | LippSmith Dec. Ex. 84 |

PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS;
PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS

| | |
|---|---|
| licensed products and generally market the *MW3* game. | |
| 131.   While developing the design for the Turtle Beach headphones, Activision's Global Brand Manager C. Tyler Michaud specifically noted dissatisfaction with initial designs proposed by Turtle Beach because none of these initial designs included the Infringing Mark. | LippSmith Dec. Ex. 84 (ACTIV0020872; ACTIV0020875-0020878) |
| 132.   Michaud wrote that the product design "needs to be more distinctive and impactful across all 4 skus[2]…Can we provide additional assets to direct [Turtle Beach] to a better place? <u>Can we leverage faction insignias (Delta?)</u> or other iconic images…" | LippSmith Dec. Ex. 84 (emphasis added) (ACTIV35; ACTIV0020872) |
| 133.   Defendants' prominent use of the Infringing Mark on the advertisement in the Guide demonstrates the degree to which these licensing agreements allowed Activision to "leverage" the Infringing Mark as an "asset" to drive sales. | Fitzpatrick Dec., Ex. 4 (Brady000001, p. 351); LippSmith Dec. Ex. 87 (VTB1-4) |
| 134.   Each of the final headset models | Fitzpatrick Dec., Ex. 4 (Brady000001, |

[2] SKU stands for "stock keeping unit," a unique identifier for each distinct product and service that can be purchased in a business line.

PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS;
PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS

| | |
|---|---|
| prominently displays the Infringing Mark on the right ear piece. | p. 351); LippSmith Dec. Ex. 87 (VTB1-4) |
| 135.   Similarly, in April 2011, while developing the design for the limited edition Xbox with Microsoft, Activision employee Joe Korsmo stated that "it is incredibly important to [Activision] that the headsets, the controllers, and the console feel 'of a family.'  There should not be any disconnect with any of <u>our</u> elements." | LippSmith Dec. Ex. 84 (emphasis added) (ACTIV24171) |
| 136.   In October 2011, a Microsoft employee asked Michaud if the "Delta squad symbol on the console [was] a real symbol." | LippSmith Dec. Ex. 84 (ACTIV22974) |
| 137.   In response, Michaud stated that the Infringing Logo was "'fictional' (original art from IW)[3]…but it's 'inspired by' the general look that is out in the wild.  I don't believe there's a single 'official' Delta logo sanctioned by the military." | LippSmith Dec. Ex. 84 (ACTIV22974) |
| 138.   Thus, the Infringing Logo became the primary tool Activision used to build the "family" feel it sought when it originally began developing the | LippSmith Dec. Ex. 84 (ACTIV24170-24171; ACTIV22974); Garcia Dec. ¶ 8, Ex. 76 (NOVALOGIC 000049702) |

[3] IW stands for Infinity Ward, a developer of *CoD MW3*.

| | |
|---|---|
| strategy to co-brand Microsoft's console with *MW3*. | |
| 139.   In October 2011, just prior to the release of *MW3*, Activision's marketing department was working to build publicity for the game's launch, with the Infringing Logo at the center of Activision's efforts. | LippSmith Dec. Ex. 84 |
| 140.   Activision employee Christopher Reinhart stated that he was "trying to get as many cool designs/logos together as possible.  In particular, I am really after the Delta logo, so anything cool [Michaud has] for this…would be appreciated." | LippSmith Dec. Ex. 84 (ACTIV22931) |
| 141.   Thus, from the wide selection of insignias, logos, and symbols that Activision had its disposal, Activision's own marketing officers believed the Infringing Logo would be the best selling point for *MW3's* launch. | LippSmith Dec. Ex. 84 (ACTIV000022726; ACTIV22931); LippSmith Dec. Ex. 88 (NOVALOGIC 000049703) |
| 142.   In addition, Activision ordered specially-made "Delta Force Logo hats." | LippSmith Dec. Ex. 84 (ACTIV000022726) |
| 143.   To reach its target demographic, Activision marketed *MW3* using the Infringing Mark through the video | Fitzpatrick Dec., Ex. 4 (Brady000001, p. 351) |

PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS;
PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS

| | |
|---|---|
| game press. | |
| 144.   In a prime example, the Guide included an advertisement for the headsets which displays the Infringing Mark five times. | Fitzpatrick Dec., Ex. 4 (Brady000001, p. 351) |
| 145.   Like NovaLogic, Activision and BradyGAMES created Facebook pages and Twitter accounts to build hype before the release. | LippSmith Dec. Ex. 89. |
| 146.   Like NovaLogic, Activision and BradyGAMES sold their games and game related products through online retailers such as Amazon, Gamestop, and Steam. | Garcia Dec. ¶ 11. |
| 147.   Like NovaLogic, Activision and BradyGAMES also sold through Gamestop's physical locations and retail outlets such as Wal-Mart, Best Buy, Fry's Electronics, and Target. | Garcia Dec. ¶ 11. |
| 148.   Consumer awareness and choice is substantially affected by misappropriation of the Logo. | Declaration of Russell S. Winer ("Winer Dec.") ¶ 41. |
| 149.   Activision's licensing and use of the Logo within the game and on the associated products were concerted efforts to cross-brand Activision's *MW3* game. | Winer Dec. ¶ 51. |

| | |
|---|---|
| 150.   Activision's use of the Logo in the video game cannot be separated from its use of the Logo in other channels. | Winer Dec. ¶ 52. |
| 151.   Use of the Logo both within the MW3 game and on the Xbox, headphones, and in a strategy guide cannot be considered merely artistic use. | Winer Dec. ¶ 53. |
| 152.   Activision employed general principles of promotion and cross-branding in order to drive brand identity and, therefore, drive sales of the Activision Call of Duty Modern Warfare 3 game. | Winer Dec. ¶ 51. |
| 153.   In November 2011, Activision released *MW3*, the most successful version of the *Call of Duty* series in terms of worldwide sales. | LippSmith Dec. Ex. 85 (NOVALOGIC 000049636, 49638) |
| 154.   *MW3* and the Guide initially retailed for $59.99 and $19.99, respectively. | Garcia Dec. ¶ 12, Ex. 3. |
| 155.   *MW3* grossed over $1 billion in its first sixteen days of sales. | LippSmith Dec. Ex. 83 (NOVALOGIC 000049638) |
| 156.   Activision incorporated a design mark into *MW3* which is virtually identical to NovaLogic's Logo, *i.e.,* the | LippSmith Dec. Ex. 90. |

PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS;
PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS

| | |
|---|---|
| Infringing Mark. | |
| 157.   Both NovaLogic's and Activision's marks consist of a dagger overlaid by a triangular delta sign with one edge shaped like a lightning bolt. | LippSmith Dec. Ex. 90. |
| 158.   Activision also incorporated the term "Delta Force" throughout *MW3*. | LippSmith Dec. Ex. 88. |
| 159.   In response to Microsoft's inquiry as to whether the "Delta squad symbol on the console [was] a real symbol," Activision replied by describing the Infringing Logo was "'fictional,'" "original art," and "'inspired by' the general look that is out in the wild." | LippSmith Dec. Ex. 84. (Activ000022974) |
| 160.   In total, NovaLogic's marks appear throughout at least one-third of *MW3*'s content. | Fitzpatrick Dec., Ex. 4 (Brady000001, pp. 10, 19, 60, 73, 80, 119, 351). |
| 161.   In single player mode, six of sixteen missions are designated Delta Force missions, in which the only avatar available to players is a Delta Force operator. | Fitzpatrick Dec., Ex. 4 (Brady000001, pp. 10, 19, 60, 73, 80, 119, 351). |
| 162.   The Infringing Mark appears in both static screenshots (when the player pauses the game) and dynamic screenshots (while the game is in play). | LippSmith Dec. Ex. 88. |

PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS;
PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS

| | |
|---|---|
| 163.   In multiplayer mode, "Delta Force" is one of the factions a player can select. | LippSmith Dec. Ex. 88. |
| 164.   The Delta Force option is presented to players through display of the Infringing Mark. | LippSmith Dec. Ex. 88. |
| 165.   When a player selects the Delta Force side, the Logo appears frequently throughout the mission. | LippSmith Dec. Ex. 88. |
| 166.   If the player chooses the alternate side, all enemies are designated "Delta Force" and use of the Infringing Mark still appears frequently throughout the game. | LippSmith Dec. Ex. 88. |
| 167.   Soon after Activision released *MW3*, NovaLogic began receiving communications from confused consumers. | Garcia Dec. ¶ 9, Ex. 77 (NOVALOGIC 000049637). |
| 168.   A German user e-mailed NovaLogic inquiring whether "the Deltaforce Brand is sold to Activision." | Garcia Dec. ¶ 9, Ex. 77 (NOVALOGIC 000049637). |
| 169.   In an online forum posting, whereby a picture of the limited edition Xbox 360 was pasted below the text, a user inquired about the "logo on the [r]ight side…Isnt [sic] that Copyrighted to NovaLogic for their Delta Force | Garcia Dec. ¶ 10, Ex. 78 (NOVALOGIC 000049633) |

PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS;
PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS

| | |
|---|---|
| series?" | |
| 170.   On YouTube, videos with thousands of views have used the Logo in connection with *MW3* elements demonstrating that consumers are confused about Activision's connection to the Logo. | Garcia Dec. ¶ 10, Ex. 78 (NOVALOGIC 000049688) |
| 171.   For example, in one YouTube video, the Logo is the *only* the visual image of a fourteen second video entitled "MW3 – Delta Force Spawn Theme." | Garcia Dec. ¶ 10, Ex. 78 (NOVALOGIC 000049688) |
| 172.   The audio track is the spawn[4] music for the Delta Force faction in *MW3*. | Garcia Dec. ¶ 10, Ex. 78 (NOVALOGIC 000049688) |
| 173.   Another YouTube video about *MW3* character skins[5] opens with a 28-second still shot of the Logo, not recognizing that the Logo was not actually affiliated with *MW3*. | Garcia Dec. ¶ 10, Ex. 78 |
| 174.   On Facebook, a fan page entitled "Delta Force (MW3)" uses the | Garcia Dec. ¶ 10, Ex. 78 (NOVALOGIC 000049685) |

[4] In video and computer games, spawn is the reforming or appearance of a player somewhere in the game level. For example, in first person shooter games, when a character is killed the game is not over. Rather the character spawns in one of several set locations in the map and continues playing. *See* http://www.webopedia.com/TERM/S/spawn.html

[5] A "skin" is an alternate appearance for an avatar in a videogame. *See* http://whatis.techtarget.com/definition/skin.

| | |
|---|---|
| Infringing Logo as the profile image and NovaLogic's Logo as the banner image. | |
| 175.   If there is any doubt that this is a result of consumer confusion and is causing even more consumer confusion, a visitor to the page posted the question "[i]s this for the Delta Force clan on [Call of Duty] elite with CT [Delta Force]." | Garcia Dec. ¶ 10, Ex. 78 (NOVALOGIC 000049685) |
| 176.   Another webpage created by Italian gamers prominently displays NovaLogic's Logo on a page clearly dedicated to Activision's *MW3*. | Garcia Dec. ¶ 10, Ex. 78 (NOVALOGIC 000049685) |
| 177.   NovaLogic and Activision are direct competitors. | Garcia Dec. ¶ 10; *see also* Def's Mtn. 1:16-20, 2:2-9. |
| 178.   Defendants' use of the Infringing Mark and Delta Force® Mark and overt refusal to halt their activities demonstrates that Activision knowingly, willfully, and intentionally marketed a competing product bearing confusingly similar, if not identical, infringing trademarks. | LippSmith Dec. Ex. 85 (NOVALOGIC 000049657-49664) |
| 179.   NovaLogic must have its incontestable trademarks preserved in order to protect the multiple Delta | Garcia Dec. ¶ 14. |

PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS;
PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS

| Force games and game designs currently being worked on and/or developed by NovaLogic. | |
|---|---|

DATED:  May 23, 2013          GIRARDI | KEESE


By:  /s/ Graham B. LippSmith
     Thomas V. Girardi
     Howard B. Miller
     Graham B. LippSmith
     Attorneys for Plaintiff
     NOVALOGIC, INC.

PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS;
PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS