Plaintiff's Summary Judgment

# EXHIBIT 85

# vivendi
## GAMES

<u>VIA FEDERAL EXPRESS</u>

December 5, 2008

NovaLogic, Inc.
26010 Mureau Road, Suite 200
Calabasas, CA  91302

After the creation of Activision Blizzard, we have made a difficult decision to exit the mobile games and media publishing business. We are discontinuing the operations of Vivendi Games Mobile immediately.

Reference is made to that certain Letter of Intent dated July 5, 2005 ("LOI"), by and between NovaLogic, Inc. ("NovaLogic") and Vivendi Games, Inc. (formerly known as Vivendi Universal Games, Inc.) ("Vivendi"). Unless otherwise defined in this letter, all capitalized terms will have the meanings ascribed to such terms in the LOI.

This letter serves as written notice to NovaLogic that pursuant to Section 14(i) of the LOI, Vivendi is terminating the LOI since Vivendi has ceased its mobile publishing business. Termination is effective Monday, December 8, 2008. The Advance paid by Vivendi under the LOI has not been recouped (unrecouped amount is approximately $465,000) and therefore no further payment or reporting will be made.

If you have any questions please contact me at terry.quan@activision.com or (310) 431-4644 prior to December 31, 2008 (after this date, please contact Jean-Francois Grollemund at jean-francois.grollemund@activision.com or (310) 255-2090).

We greatly appreciate your assistance and support of our business.

Regards,

*TQ/deb*

Terry K. Quan
Senior Vice President, Business Development

cc:   Jean-Francois Grollemund, Activision Blizzard

6060 Center Drive · 6th floor · Los Angeles, CA  90045 · tel 310.431.4000 · fax 310.431.2644
T 310 431 4000 I F 310 342 0533, 6060 Center Drive, 5th Floor, Los Angeles, California 90045

Plaintiff's Summary Judgment Exhibit 85

NOVALOGIC 000049648

## Letter of Intent

This Letter of Intent (this "**LOI**") is made this 5th day of July, 2005 (the "**Effective Date**"), and shall serve as the agreement by and between NovaLogic, Inc. ("*NovaLogic*"), with its principal offices at 26010 Mureau Road, Suite 200, Calabasas, California 91302, and **Vivendi Universal Games, Inc.** ("*Licensee*"), with its principle offices at 6060 Center Drive, 5th Floor, Los Angeles, California, 90045, of the basic terms and conditions regarding the license to create and distribute mobile games based upon NovaLogic's products as set forth below. This LOI shall be a binding agreement until a more definitive formal agreement (the "*Definitive Agreement*" and, collectively with this LOI, the "*Agreement*") is finalized and agreed to by and between NovaLogic and Licensee.

1. Definitions.

    1.1. "Affiliate" means any legal entity that is controlled by, or under control with, a Party. For purposes of this definition, "control" means the direct or indirect ownership of fifty percent (50%) or more of the shares or interests which are entitled to vote for the directors of an entity or the equivalent, for as long as such entitlement subsists, or which means equivalent power over management of an entity.

    1.2. "Commercial Release" the date on which a Game or other product is first available for purchase by an End User.

    1.3. "Distribution Server" means a download server under the control of Licensee or a Sub-Licensee from where Games are delivered to End Users.

    1.4. "Download" means transmitting a copy of a Game to an End User's Wireless Device via various wireless transmission methods of delivery and distribution, including without limitation, via the Internet, cable, satellite, web, "Wireless Application Protocol" ("**WAP**") pull or selection, wireless local area network (a/k/a WLAN), Bluetooth technology (infrared or other similar radio wave technology), wired connection from a local computer, short or smart messaging service (a/k/a SMS), subsequent corresponding technologies or any other form of distribution or transmission of a Game or means of making a Game available for use on a Wireless Device. In the WAP method of delivery, an End User uses his/her Wireless Device to browse the mobile or wireless internet and by visiting a Licensee WAP site can select to purchase a downloadable version of a Game from a menu and the Game will be sent to the End User's Wireless Device and the End User will be separately billed for his/her purchase.

    1.5. "End User" means any person within the Territory who receives a Game or to whom a Game is distributed by means of a Sale for the purpose of delivery for use on a Wireless Device.

    1.6. "Game" means the interactive application, including all localized versions of the application on any and all Platforms, based upon the Licensed Properties created or owned by NovaLogic, existing alone or in combination with other content, which is delivered, viewed or executed on a client device or server-side, sold either by subscription, pay-per-use, one-time-download or other allowable monetization strategy

PWD 

1

Plaintiff's Summary Judgment Exhibit 85

NOVALOGIC 000049649

to an end-user of a Wireless Device. Each Game shall contain the appropriate legal disclaimers and notices of ownership provided by NovaLogic.

1.7. "Game Files" shall mean all audio, text, art, object code, byte code, as well as all third party dynamically linked libraries ("DLLs") used by Licensee in the creation of the Games.

1.8. "Intellectual Property Brand" means the name, titles, characters, art and sound assets, stories and other intellectual properties which comprise the distinctive look and feel of each of NovaLogic's game franchises, including but not limited to Delta Force, Black Hawk Down, Comanche, F-22 and Armored Fist.

1.9. "Licensee Revenue" means the gross revenue directly or indirectly gained by Licensee or a Licensee Affiliate from the Sale of a Game, calculated by using the Sale price of the Game to an End User or a Sublicensee (meaning Licensee's resellers, carriers or distributors, or other persons or entities), as applicable less any applicable sales taxes.

1.10. "Marks" means trade names, logos, marks and service marks, as well as representations of the foregoing.

1.11. "Promotion" means a promotional offer, contest, give-away or other similar distribution of a Game for no consideration or consideration other than the then-current full retail price.

1.12. "Sale", "Sell" or "Sold" means any action whereby an End User in the Territory obtains directly or indirectly from Licensee, a Licensee Affiliate or a Sublicensee a full and complete Game that is capable of being received by a Wireless Device. For purposes of this Agreement, a Sale shall not include any transmission, performance or use of a Game that is available for preview or demonstration purposes without charge, for no consideration, or distributed without charge, for no consideration, as part of Promotions.

1.13. "Sublicensee(s)" mean: (1) wireless service providers, whether acting as wireless telecommunication system voice or data operators (a/k/a carriers), SMS gateway service providers or integrators, or digital service content providers; and (2) retailers who sell or offer to sell Wireless Devices.

1.14. "Underlying Technology" means computer source code and computer binary code, including, the 2D or 3D engine and all of Licensee's (and its third party licensors') proprietary utilities, middleware and development tools associated with the Games and development thereof that are proprietary to Licensee or its third party licensors regardless of when created.

1.15. "Wireless Device" shall mean mobile voice and/or data communications handsets and mobile phones which are capable of receiving a Game, including, but not limited to, a cellular phone enabled by technologies such as WAP, BREW, SMS, MMS, Symbian, MS Smartphone, and J2ME, and not specifically developed for use on Nokia's N-Gage game deck, Sony PSP, Nintendo DS, Apple iPod, personal computers and PDAs and all similar devices. Such handsets and mobile phones may have additional functionality such as a PDA, camera, or MP3 player.

2   PWO

Plaintiff's Summary Judgment Exhibit 85

NOVALOGIC 000049650

2. <u>License Grant</u>. Pursuant to the terms and conditions of this Agreement, NovaLogic grants to Licensee, and Licensee accepts from NovaLogic, an exclusive license (the **"License Grant"**) to develop and manufacture the Games and to distribute, sell, market, and advertise those Games in the territory (**"Territory"**), during the term (**"Term"**), and on the platforms (**"Platforms"**) specified in Schedule A. The foregoing grant includes, the right for Licensee to make translations, modifications, reproductions, adaptations, enhancements and derivative works of four Games and to use, copy, distribute, perform (for demonstration and previewing purposes by website visitors) and display the Games on Wireless Devices via fixed-storage, wired and wireless means. In connection with marketing and advertising efforts, NovaLogic grants Licensee the right to use the names and elements of the Licensed Property to promote the Games. Licensee shall further have the right to grant to End Users of the Games a continuing license to use the Licensed Property, as embodied in the Games. Notwithstanding any other provision of this Agreement, Licensee shall ensure that no Game is published, released, distributed or otherwise commercially exploited or supplied to any third party unless it has first been approved in writing by NovaLogic under the terms of this Agreement.

3. <u>Sublicensing</u>: Licensee may sublicense its rights to distribute, sell, market and advertise the Games to the Sublicensee(s), including the right to use, copy, distribute, perform (for demonstration and previewing purposes by website visitors) and display the Games on Wireless Devices via fixed-storage, wired and wireless means and to use the names and elements of the Licensed Property to promote the Games for marketing and advertising. Sublicensee shall further have the right to grant to End Users of the Games a continuing license to use the Licensed Property, as embodied in the Games.

4. <u>Development of Games</u>.   Licensee shall have the right, but not the obligation, to develop four Games during the Term. Should Licensee request, NovaLogic shall provide Licensee with art, sound and text assets from the applicable Intellectual Property Brand to aid Licensee in creating each of the Games. Before commencing the development of a Game, Licensee shall obtain NovaLogic's approval of the specification against which the Game (such as the game design document) is developed and Licensee shall also obtain NovaLogic's approval of the Beta version of the Game. NovaLogic shall provide its approval or disapproval for the game design document and Beta version of the Game within 10 business days of receiving such deliverables from Licensee. NovaLogic agrees that such approval shall not be unreasonably withheld, delayed or denied.

5. <u>Marketing</u>.

   5.1.   Upon Licensee's request NovaLogic shall provide Licensee with materials, including art assets and marketing and promotional materials which Licensee may use to create marketing and promotional materials for the Games, provided any item of advertising, marketing or promotion is approved in writing by NovaLogic before it is used. NovaLogic agrees to use its best efforts to approve such materials within 10 business days and that such approvals shall not to be unreasonably withheld, delayed or denied). Notwithstanding the foregoing, Licensee shall not be required to obtain approval of art assets, marketing or promotional materials which are substantially similar to assets or materials which have already been approved by NovaLogic.

   5.2.   Licensee shall be responsible for all marketing and promotion of the Games. Notwithstanding the foregoing, should Licensee request NovaLogic agrees to:

Plaintiff's Summary Judgment Exhibit 85

NOVALOGIC 000049651

  5.2.1. Insert advertisements for the Games, provided by Licensee at Licensee's cost, in the packaging for the retail version of NovaLogic's console and PC products;

  5.2.2. post an advertisement for the Games which would be hyperlinked using an Internet address provided by Licensee on NovaLogic's homepage for the applicable Intellectual Property Brand;

  5.2.3. send emails approved by NovaLogic which advertise the Games to NovaLogic's database of customers who have purchased NovaLogic products; and

  5.2.4. Mention the Game in all print advertising for a NovaLogic console or PC product, if a Game is scheduled to be Commercially Released within two months of the Commercial Release date of one of NovaLogic's console or PC products based upon the same Intellectual Property Brand.

6. <u>Advances and Royalties Payable by Licensee</u>: Licensee shall make payments to NovaLogic as set forth in Schedule A and this Section.

 6.1. <u>Advance</u>:  Licensee shall pay NovaLogic a non-refundable advance or advances ("**Advance(s)**") (fully recoupable from all royalties payable to NovaLogic) as specified in Schedule A.

 6.2. <u>Royalties</u>:  Subject to full recoupment of the Advance, Licensee shall pay NovaLogic royalties ("**Royalties**") as specified in Schedule A for each unit of the Games sold or otherwise distributed by Licensee or sublicensed by Licensee (if Approved by NovaLogic), without any deductions whatsoever, except for Game units supplied as replacements for defective Game units. Notwithstanding any provision herein to the contrary, neither Party shall pay any Royalty or other fee for any demonstration versions of the Games given away without charge, for no consideration. In addition, Licensee shall not pay any Royalty or other fee for any copies of the Games that have been distributed for free with NovaLogic's prior written Approval. Subject to the prior written Approval of NovaLogic, Licensee may distribute on a gratis or discounted basis an Approved number of copies of the Games for promotional, demonstration and marketing purposes. Provided that such units are given away without charge, for no consideration, Licensee will not incur any Royalty or any other fees for such units of the Games made available to End Users or Licensee trade customers, distributors or dealers for purposes of promoting a Game or any Licensee product, or for Licensee Products used by Licensee for demonstration or testing purposes and/or for customer support of Licensee Products or the Games.

 6.3. <u>Payment</u>:  Licensee will calculate the Royalty due to Licensor under this Agreement as the end of Licensee's fiscal quarters in each calendar year in respect (in each case) of the three preceding calendar months (each a "Quarter"), and agrees to deliver to NovaLogic, by email or such other method as NovaLogic may reasonably specify, no later than 30 (thirty) days after each such date a statement of Royalty payable to NovaLogic including a report of (a) all distribution, licensing and the other exploitation of Games during that Quarter, and (b) all of the sums received or going towards the calculation of Royalty during such Quarter, in each case, broken down by Game and type of transaction giving rise to the Royalty. Upon the date of such report, Licensor shall make payment of the Royalty specified in the report by direct transfer into such bank account as NovaLogic may specify from time to time,

4

*PWO*

7. <u>Reporting Obligations</u>. Licensee shall supply reports to NovaLogic in accordance with Licensee's customary business practices. Upon reasonable request and if feasible, Licensee shall supply additional reports to NovaLogic.

8. <u>Customer Support; Warranty Obligations</u>. Licensee shall be solely responsible for customer support and warranty obligations (pursuant to Licensee's End User License Agreements) to end users of the Products, which customer and warranty support shall be provided according to Licensee's standard practices, which practices Licensee may change from time to time in its sole discretion. Notwithstanding the aforementioned, such Licensee customer support and warranty practices shall be no less than those which are customary in the industry.

9. <u>Records; Audit Rights</u>. Licensee shall maintain accurate records as customarily kept by Licensee of the calculations of the payments due to NovaLogic hereunder. During the Term and for one year thereafter, NovaLogic, at its expense, and upon not less than ten (10) business days advance written notice to Licensee, shall have the right not more than once during each calendar year to have a certified public accounting firm, who is not working on a contingency fee basis, examine or audit such records in order to verify the figures reported and the amounts payable to NovaLogic by Licensee under this Agreement; such audit to take place only during reasonable business hours and in such a manner so as not to interfere with Licensee's normal business activities. In that regard, no audit may be conducted during the first three (3) weeks of any calendar quarter, no audit shall continue for longer than ten (10) business days, and the records supporting any such audit shall not be audited more than once. All of the information contained in Licensee's books and records shall be kept confidential, except to the extent necessary to permit enforcement of NovaLogic's rights hereunder, and NovaLogic agrees that such information inspected on behalf of NovaLogic shall only be used for the purposes of determining the accuracy of the figures reported and the amounts payable to NovaLogic. NovaLogic shall furnish Licensee with a copy of NovaLogic's auditor's report within fifteen (15) days after the completion of such report. NovaLogic shall bear the expense of any audit conducted pursuant to this Paragraph 9 unless such audit shows an error in NovaLogic's favor amounting to a deficiency to NovaLogic over the time period audited in excess of five (5%) percent of the actual amounts paid and/or payable to NovaLogic hereunder (as reasonably determined by the auditor), provided that such underpayment is at least five thousand dollars ($5000), in which event Licensee will promptly reimburse NovaLogic an amount equal to all reasonable expenses actually incurred to conduct and collect from the audit. Licensee shall pay NovaLogic any undisputed amounts to NovaLogic within ten (10) days of receipt of a final report from the auditor setting forth in detail the amount of underpayment and the basis for determining that amount. Any over-payment discovered shall be paid by NovaLogic to Licensee within ten (10) days of receipt of the final report by NovaLogic from the auditor.

10. <u>Representations and Warranties; Disclaimers of Warranties; Limitations of Liability; Indemnification</u>. NovaLogic and Licensee each warrant and represent that they have the full right and power to enter into this LOI and that no contractual right of any third party will be violated, breached or negatively impacted by entering into this LOI. The Definitive Agreement shall include other customary representations and warranties, indemnification, disclaimers of warranties and limitations of liability (with respect to consequential, special, incidental, indirect, and punitive damages) in transactions of the type contemplated therein, including, but not limited to disclaimers of implied warranties.

PWO

5

Plaintiff's Summary Judgment Exhibit 85

NOVALOGIC 000049653

11. Ownership. NovaLogic shall own all Intellectual Property Rights in the Licensed Properties incorporated in the Games. All right, title and interest in the Games (excluding the Licensed Properties), Underlying Technology and methods of Download, and all elements of them, including without limitation all technology and proprietary Intellectual Property Rights used on or in connection with them, shall remain the property of Licensee or its third-party licensees, as the case may be.

12. Confidential Information. Each party acknowledges that by reason of its relationship to the other party under this LOI it will have access to and acquire knowledge from, material, data, systems and other information concerning the operation, business, financial affairs, products, customers and intellectual property of the other party that may not be accessible or known to the general public, including, but not limited to the terms of this Agreement (referred to as "*Confidential Information*"). Each party agrees to maintain all Confidential Information received from the other, both orally and in writing, in confidence and agrees not to disclose or otherwise make available such Confidential Information to any third party without the prior written consent of the disclosing party; provided, however, that each party may disclose the financial terms of this Agreement to its legal and business advisors and to potential investors so long as such third parties agree to maintain the confidentiality of such Confidential Information. Each party further agrees to use the Confidential Information only for the purpose of evaluating the transactions contemplated hereby. The parties' obligations under this Paragraph 12 shall not apply to Confidential Information which: (i) is or becomes a matter of public knowledge though no fault of or action by the receiving party; (ii) was rightfully in the receiving party's possession prior to disclosure by the disclosing party; (iii) subsequent to disclosure, is rightfully obtained by the receiving party from a third party who is lawfully in possession of such Confidential Information without restriction; (iv) is independently developed by the receiving party without resort to the disclosing party's Confidential Information; or (v) is required by law or judicial order or stock exchange regulation, provided that prior written notice of such required disclosure is furnished to the disclosing party as soon as practicable in order to afford the disclosing party an opportunity to seek a protective order and that if such order cannot be obtained disclosure may be made without liability.

13. No Solicitation. Neither party will directly or indirectly solicit or encourage a then-current employee of the other party to leave his or her employment to become an employee or independent contractor of the soliciting party. Neither party will hire any person who has been employed by the other party within ninety (90) days following the termination of such employee's employment. Notwithstanding the foregoing, upon termination of this Agreement for any reason, neither party will hire any person who has been employed by the other party within one hundred eighty (180) days following such termination.

14. Term and Termination. The term of this Agreement is defined in Schedule A. The Definitive Agreement shall include customary provisions regarding termination of transactions of the type contemplated therein. In addition to the foregoing, either party may terminate this Agreement upon the occurrence of any of the following events: (i) either party ceases to do business; (ii) the sale of all or substantially all of the assets of either party, the merger or consolidation of either party, or other change of control of either party; or (iii) either party becomes insolvent or seeks protection under any bankruptcy, receivership, trust, deed, creditor's arrangement, or comparable proceeding, or if any such proceeding is instituted against such party and not dismissed within thirty (30) days.

PWD 

Plaintiff's Summary Judgment Exhibit 85

NOVALOGIC 000049654

15. <u>Negotiations</u>. The parties shall commence good faith negotiation with respect to the Definitive Agreement promptly following the execution of this LOI which Definitive Agreement shall incorporate the business terms contained herein as well as other terms contained in Licensee's standard Distribution Agreement to be negotiated in good faith within the parameters of industry custom and practice.

16. <u>Press Releases</u>. No party will issue any public statement, press release or other communication with respect to this LOI or the discussions related to the subject matter hereof, unless such public statement, press release or other communication has first been submitted to and approved in writing by the other parties.

17. <u>Miscellaneous</u>. This Agreement sets forth the entire agreement between Licensee and NovaLogic, and supersedes any and all prior agreements (whether written or oral) of NovaLogic and Licensee with respect to the subject matter set forth herein. The parties contemplate entering into the Definitive Agreement incorporating the terms hereof; however, until such Definitive Agreement is executed, the parties shall operate under the terms of this LOI. This Agreement shall be governed by and construed in accordance with the laws of the State of California, exclusive of its provisions on conflicts of laws. In respect of any dispute relating to this Agreement, such dispute shall be brought exclusively in a court of competent jurisdiction sitting in Los Angeles, California. The prevailing party shall be awarded reasonable attorney fees, expert witness costs and expenses, and all other costs and expenses incurred directly or indirectly in connection with the proceedings. Either party's failure to insist upon or enforce strict performance of any provision of this Agreement shall not be construed as a waiver of any provision or right. Neither the course of conduct between the parties nor trade practice shall act to modify any provision of this Agreement. If any provision of this Agreement shall be deemed unlawful, void, or for any reason unenforceable, then that provision shall be deemed severable from this Agreement and shall not affect the validity and enforceability of any remaining provisions.

**IN WITNESS WHEREOF**, the parties have caused their respective representatives, each duly authorized, to execute the duplicate originals of this LOI.

Vivendi Universal Games, Inc.

By: [signature]
Title: COO & President NA
Date: 7/  /2005

NovaLogic, Inc.

By: [signature]
Title: President
Date: July 5, 2005

7

Plaintiff's Summary Judgment Exhibit 85

NOVALOGIC 000049655

# SCHEDULE A

| | |
|---|---|
| Licensed Property: | All Intellectual Property Brands owned or controlled by NovaLogic, including but not limited to Delta Force, Black Hawk Down, Comanche, F-22 and Armored Fist. |
| Platform: | Wireless Devices |
| Territory: | Worldwide |
| Term: | The Term of the Agreement shall commence upon the Effective Date and shall expire upon the third anniversary of the Effective Date. |
| Term Extension | Licensee shall notify NovaLogic at least thirty (30) calendar days prior to the expiration of the Term of its intention to extend the Term for an additional one year period. NovaLogic shall have a period of fifteen (15) calendar days to either accept or reject such extension. Should NovaLogic accept the extension, the Term shall be extended for one additional year and Licensee shall have the right to create an additional Game. |
| Distribution Term | The Distribution Term for each Game shall commence on the Commercial Release of the Game and shall expire on the later of (a) the expiration of the Term, including any extension of the Term or (b) the two (2) year anniversary of the Commercial Release of the Game. |
| Advance: | $750,000.00 USD to be paid as follows:<br>1. $350,000 within one week of execution of this LOI;<br>2. $200,000 on or before June 30, 2006; and<br>3. $200,000 on or before December 31, 2006. |
| Royalty: | 30% of Licensee Revenue. |

PWD 

Plaintiff's Summary Judgment Exhibit 85

NOVALOGIC 000049656

07/05/2005 02:59 FAX 1+310+342+0533        6th FL Executive                    ☒001

07/05/2005  09:27   8188801998              NOVALOGIC                    PAGE  02

## Letter of Intent

This Letter of Intent (this "*LOI*") is made this 5th day of July, 2005 (the "**Effective Date**"), and shall serve as the agreement by and between NovaLogic, Inc. ("*NovaLogic*"), with its principal offices at 26010 Mureau Road, Suite 200, Calabasas, California 91302, and **Vivendi Universal Games, Inc.** ("*Licensee*"), with its principle offices at 6060 Center Drive, 5th Floor, Los Angeles, California, 90045, of the basic terms and conditions regarding the license to create and distribute mobile games based upon NovaLogic's products as set forth below. This LOI shall be a binding agreement until a more definitive formal agreement (the "*Definitive Agreement*" and, collectively with this LOI, the "*Agreement*") is finalized and agreed to by and between NovaLogic and Licensee.

1. Definitions.

    1.1. "Affiliate" means any legal entity that is controlled by, or under control with, a Party. For purposes of this definition, "control" means the direct or indirect ownership of fifty percent (50%) or more of the shares or interests which are entitled to vote for the directors of an entity or the equivalent, for as long as such entitlement subsists, or which means equivalent power over management of an entity.

    1.2. "Commercial Release" the date on which a Game or other product is first available for purchase by an End User.

    1.3. "Distribution Server" means a download server under the control of Licensee or a Sub-Licensee from where Games are delivered to End Users.

    1.4. "Download" means transmitting a copy of a Game to an End User's Wireless Device via various wireless transmission methods of delivery and distribution, including without limitation, via the Internet, cable, satellite, web, "Wireless Application Protocol" ("WAP") pull or selection, wireless local area network (a/k/a WLAN), Bluetooth technology (infrared or other similar radio wave technology), wired connection from a local computer, short or smart messaging service (a/k/a SMS), subsequent corresponding technologies or any other form of distribution or transmission of a Game or means of making a Game available for use on a Wireless Device. In the WAP method of delivery, an End User uses his/her Wireless Device to browse the mobile or wireless internet and by visiting a Licensee WAP site can select to purchase a downloadable version of a Game from a menu and the Game will be sent to the End User's Wireless Device and the End User will be separately billed for his/her purchase.

    1.5. "End User" means any person within the Territory who receives a Game or to whom a Game is distributed by means of a Sale for the purpose of delivery for use on a Wireless Device.

    1.6. "Game" means the interactive application, including all localized versions of the application on any and all Platforms, based upon the Licensed Properties created or owned by NovaLogic, existing alone or in combination with other content, which is delivered, viewed or executed on a client device or server-side, sold either by subscription, pay-per-use, one-time-download or other allowable monetization strategy



1

PAGE 2/9 * RCVD AT 7/5/2005 10:31:37 AM [Pacific Daylight Time] * SVR:LAC-C-RFAX/0 * DNIS:4312625 * CSID:8188801998 * DURATION (mm-ss):04-32

PAGE 1/8 * RCVD AT 7/5/2005 2:56:16 PM [Pacific Daylight Time] * SVR:LAC-C-RFAX/0 * DNIS:4312625 * CSID:1+310+342+0533 * DURATION (mm-ss):04-32

Plaintiff's Summary Judgment Exhibit 85

NOVALOGIC 000049657

to an end-user of a Wireless Device. Each Game shall contain the appropriate legal disclaimers and notices of ownership provided by NovaLogic.

1.7. "Game Files" shall mean all audio, text, art, object code, byte code, as well as all third party dynamically linked libraries ("DLLs") used by Licensee in the creation of the Games.

1.8. "Intellectual Property Brand" means the name, titles, characters, art and sound assets, stories and other intellectual properties which comprise the distinctive look and feel of each of NovaLogic's game franchises, including but not limited to Delta Force, Black Hawk Down, Comanche, F-22 and Armored Fist.

1.9. "Licensee Revenue" means the gross revenue directly or indirectly gained by Licensee or a Licensee Affiliate from the Sale of a Game, calculated by using the Sale price of the Game to an End User or a Sublicensee (meaning Licensee's resellers, carriers or distributors, or other persons or entities), as applicable less any applicable sales taxes.

1.10. "Marks" means trade names, logos, marks and service marks, as well as representations of the foregoing.

1.11. "Promotion" means a promotional offer, contest, give-away or other similar distribution of a Game for no consideration or consideration other than the then-current full retail price.

1.12. "Sale", "Sell" or "Sold" means any action whereby an End User in the Territory obtains directly or indirectly from Licensee, a Licensee Affiliate or a Sublicensee a full and complete Game that is capable of being received by a Wireless Device. For purposes of this Agreement, a Sale shall not include any transmission, performance or use of a Game that is available for preview or demonstration purposes without charge, for no consideration, or distributed without charge, for no consideration, as part of Promotions.

1.13. "Sublicensee(s)" mean: (1) wireless service providers, whether acting as wireless telecommunication system voice or data operators (a/k/a carriers), SMS gateway service providers or integrators, or digital service content providers; and (2) retailers who sell or offer to sell Wireless Devices.

1.14. "Underlying Technology" means computer source code and computer binary code, including, the 2D or 3D engine and all of Licensee's (and its third party licensors') proprietary utilities, middleware and development tools associated with the Games and development thereof that are proprietary to Licensee or its third party licensors regardless of when created.

1.15. "Wireless Device" shall mean mobile voice and/or data communications handsets and mobile phones which are capable of receiving a Game, including, but not limited to, a cellular phone enabled by technologies such as WAP, BREW, SMS, MMS, Symbian, MS Smartphone, and J2ME, and not specifically developed for use on Nokia's N-Gage game deck, Sony PSP, Nintendo DS, Apple iPod, personal computers and PDAs and all similar devices. Such handsets and mobile phones may have additional functionality such as a PDA, camera, or MP3 player.

2

PAGE 3/9 * RCVD AT 7/5/2005 10:31:37 AM [Pacific Daylight Time]* SVR:LAC-C-RFAX/0 * DNIS:4312625 * CSID:8188801998 * DURATION (mm-ss):04-32

PAGE 2/8 * RCVD AT 7/5/2005 2:56:16 PM [Pacific Daylight Time] * SVR:LAC-C-RFAX/0 * DNIS:4312625 * CSID:1+310+342+0533 * DURATION (mm-ss):04-32

Plaintiff's Summary Judgment Exhibit 85

NOVALOGIC 000049658

2. <u>License Grant</u>. Pursuant to the terms and conditions of this Agreement, NovaLogic grants to Licensee, and Licensee accepts from NovaLogic, an exclusive license (the "License Grant") to develop and manufacture the Games and to distribute, sell, market, and advertise those Games in the territory ("Territory"), during the term ("Term"), and on the platforms ("Platforms") specified in Schedule A. The foregoing grant includes, the right for Licensee to make translations, modifications, reproductions, adaptations, enhancements and derivative works of four Games and to use, copy, distribute, perform (for demonstration and previewing purposes by website visitors) and display the Games on Wireless Devices via fixed-storage, wired and wireless means. In connection with marketing and advertising efforts, NovaLogic grants Licensee the right to use the names and elements of the Licensed Property to promote the Games. Licensee shall further have the right to grant to End Users of the Games a continuing license to use the Licensed Property, as embodied in the Games. Notwithstanding any other provision of this Agreement, Licensee shall ensure that no Game is published, released, distributed or otherwise commercially exploited or supplied to any third party unless it has first been approved in writing by NovaLogic under the terms of this Agreement.

3. <u>Sublicensing</u>: Licensee may sublicense its rights to distribute, sell, market and advertise the Games to the Sublicensee(s), including the right to use, copy, distribute, perform (for demonstration and previewing purposes by website visitors) and display the Games on Wireless Devices via fixed-storage, wired and wireless means and to use the names and elements of the Licensed Property to promote the Games for marketing and advertising. Sublicensee shall further have the right to grant to End Users of the Games a continuing license to use the Licensed Property, as embodied in the Games.

4. <u>Development of Games</u>.    Licensee shall have the right, but not the obligation, to develop four Games during the Term. Should Licensee request, NovaLogic shall provide Licensee with art, sound and text assets from the applicable Intellectual Property Brand to aid Licensee in creating each of the Games. Before commencing the development of a Game, Licensee shall obtain NovaLogic's approval of the specification against which the Game (such as the game design document) is developed and Licensee shall also obtain NovaLogic's approval of the Beta version of the Game. NovaLogic shall provide its approval or disapproval for the game design document and Beta version of the Game within 10 business days of receiving such deliverables from Licensee. NovaLogic agrees that such approval shall not be unreasonably withheld, delayed or denied.

5. <u>Marketing</u>.

   5.1.   Upon Licensee's request NovaLogic shall provide Licensee with materials, including art assets and marketing and promotional materials which Licensee may use to create marketing and promotional materials for the Games, provided any item of advertising, marketing or promotion is approved in writing by NovaLogic before it is used. NovaLogic agrees to use its best efforts to approve such materials within 10 business days and that such approvals shall not to be unreasonably withheld, delayed or denied). Notwithstanding the foregoing, Licensee shall not be required to obtain approval of art assets, marketing or promotional materials which are substantially similar to assets or materials which have already been approved by NovaLogic.

   5.2.   Licensee shall be responsible for all marketing and promotion of the Games. Notwithstanding the foregoing, should Licensee request NovaLogic agrees to:



3

PAGE 4/9 * RCVD AT 7/5/2005 10:31:37 AM [Pacific Daylight Time] * SVR:LAC-C-RFAX/0 * DNIS:4312625 * CSID:8188801998 * DURATION (mm-ss):04-32

PAGE 3/8 * RCVD AT 7/5/2005 2:56:16 PM [Pacific Daylight Time] * SVR:LAC-C-RFAX/0 * DNIS:4312625 * CSID:1+310+342+0533 * DURATION (mm-ss):04-32

Plaintiff's Summary Judgment Exhibit 85

NOVALOGIC 000049659

07/05/2005 03:01 FAX 1+310+342+0533         6th FL Executive                              ☒004

07/05/2005  09:27    8188801998              NOVALOGIC                          PAGE  05

5.2.1. Insert advertisements for the Games, provided by Licensee at Licensee's cost, in the packaging for the retail version of NovaLogic's console and PC products;

5.2.2. post an advertisement for the Games which would be hyperlinked using an Internet address provided by Licensee on NovaLogic's homepage for the applicable Intellectual Property Brand;

5.2.3. send emails approved by NovaLogic which advertise the Games to NovaLogic's database of customers who have purchased NovaLogic products; and

5.2.4. Mention the Game in all print advertising for a NovaLogic console or PC product, if a Game is scheduled to be Commercially Released within two months of the Commercial Release date of one of NovaLogic's console or PC products based upon the same Intellectual Property Brand.

6. **Advances and Royalties Payable by Licensee**: Licensee shall make payments to NovaLogic as set forth in Schedule A and this Section.

   6.1. **Advance**: Licensee shall pay NovaLogic a non-refundable advance or advances ("Advance(s)") (fully recoupable from all royalties payable to NovaLogic) as specified in Schedule A.

   6.2. **Royalties**: Subject to full recoupment of the Advance, Licensee shall pay NovaLogic royalties ("Royalties") as specified in Schedule A for each unit of the Games sold or otherwise distributed by Licensee or sublicensed by Licensee (if Approved by NovaLogic), without any deductions whatsoever, except for Game units supplied as replacements for defective Game units. Notwithstanding any provision herein to the contrary, neither Party shall pay any Royalty or other fee for any demonstration versions of the Games given away without charge, for no consideration. In addition, Licensee shall not pay any Royalty or other fee for any copies of the Games that have been distributed for free with NovaLogic's prior written Approval. Subject to the prior written Approval of NovaLogic, Licensee may distribute on a gratis or discounted basis an Approved number of copies of the Games for promotional, demonstration and marketing purposes. Provided that such units are given away without charge, for no consideration, Licensee will not incur any Royalty or any other fees for such units of the Games made available to End Users or Licensee trade customers, distributors or dealers for purposes of promoting a Game or any Licensee product, or for Licensee Products used by Licensee for demonstration or testing purposes and/or for customer support of Licensee Products or the Games.

   6.3. **Payment**: Licensee will calculate the Royalty due to Licensor under this Agreement as the end of Licensee's fiscal quarters in each calendar year in respect (in each case) of the three preceding calendar months (each a "Quarter"), and agrees to deliver to NovaLogic, by email or such other method as NovaLogic may reasonably specify, no later than 30 (thirty) days after each such date a statement of Royalty payable to NovaLogic including a report of (a) all distribution, licensing and the other exploitation of Games during that Quarter, and (b) all of the sums received or going towards the calculation of Royalty during such Quarter, in each case, broken down by Game and type of transaction giving rise to the Royalty. Upon the date of such report, Licensor shall make payment of the Royalty specified in the report by direct transfer into such bank account as NovaLogic may specify from time to time,

4

PAGE 5/9 * RCVD AT 7/5/2005 10:31:37 AM [Pacific Daylight Time] * SVR:LAC-C-RFAX/0 * DNIS:4312625 * CSID:8188801998 * DURATION (mm-ss):04-32

PAGE 4/8 * RCVD AT 7/5/2005 2:56:16 PM [Pacific Daylight Time] * SVR:LAC-C-RFAX/0 * DNIS:4312625 * CSID:1+310+342+0533 * DURATION (mm-ss):04-32

Plaintiff's Summary Judgment Exhibit 85

NOVALOGIC 000049660

07/05/2005 03:01 FAX 1+310+342+0533        6th FL Executive                          ☒005

07/05/2005 09:27    8188801998              NOVALOGIC                    PAGE  06

7. **Reporting Obligations.** Licensee shall supply reports to NovaLogic in accordance with Licensee's customary business practices. Upon reasonable request and if feasible, Licensee shall supply additional reports to NovaLogic.

8. **Customer Support; Warranty Obligations.** Licensee shall be solely responsible for customer support and warranty obligations (pursuant to Licensee's End User License Agreements) to end users of the Products, which customer and warranty support shall be provided according to Licensee's standard practices, which practices Licensee may change from time to time in its sole discretion. Notwithstanding the aforementioned, such Licensee customer support and warranty practices shall be no less than those which are customary in the industry.

9. **Records; Audit Rights.** Licensee shall maintain accurate records as customarily kept by Licensee of the calculations of the payments due to NovaLogic hereunder. During the Term and for one year thereafter, NovaLogic, at its expense, and upon not less than ten (10) business days advance written notice to Licensee, shall have the right not more than once during each calendar year to have a certified public accounting firm, who is not working on a contingency fee basis, examine or audit such records in order to verify the figures reported and the amounts payable to NovaLogic by Licensee under this Agreement; such audit to take place only during reasonable business hours and in such a manner so as not to interfere with Licensee's normal business activities. In that regard, no audit may be conducted during the first three (3) weeks of any calendar quarter, no audit shall continue for longer than ten (10) business days, and the records supporting any such audit shall not be audited more than once. All of the information contained in Licensee's books and records shall be kept confidential, except to the extent necessary to permit enforcement of NovaLogic's rights hereunder, and NovaLogic agrees that such information inspected on behalf of NovaLogic shall only be used for the purposes of determining the accuracy of the figures reported and the amounts payable to NovaLogic. NovaLogic shall furnish Licensee with a copy of NovaLogic's auditor's report within fifteen (15) days after the completion of such report. NovaLogic shall bear the expense of any audit conducted pursuant to this Paragraph 9 unless such audit shows an error in NovaLogic's favor amounting to a deficiency to NovaLogic over the time period audited in excess of five (5%) percent of the actual amounts paid and/or payable to NovaLogic hereunder (as reasonably determined by the auditor), provided that such underpayment is at least five thousand dollars ($5000), in which event Licensee will promptly reimburse NovaLogic an amount equal to all reasonable expenses actually incurred to conduct and collect from the audit. Licensee shall pay NovaLogic any undisputed amounts to NovaLogic within ten (10) days of receipt of a final report from the auditor setting forth in detail the amount of underpayment and the basis for determining that amount. Any over-payment discovered shall be paid by NovaLogic to Licensee within ten (10) days of receipt of the final report by NovaLogic from the auditor.

10. **Representations and Warranties; Disclaimers of Warranties; Limitations of Liability; Indemnification.** NovaLogic and Licensee each warrant and represent that they have the full right and power to enter into this LOI and that no contractual right of any third party will be violated, breached or negatively impacted by entering into this LOI. The Definitive Agreement shall include other customary representations and warranties, indemnification, disclaimers of warranties and limitations of liability (with respect to consequential, special, incidental, indirect, and punitive damages) in transactions of the type contemplated therein, including, but not limited to disclaimers of implied warranties.



5

PAGE 6/9 * RCVD AT 7/5/2005 10:31:37 AM [Pacific Daylight Time] * SVR:LAC-C-RFAX/0 * DNIS:4312625 * CSID:8188801998 * DURATION (mm-ss):04-32

PAGE 5/8 * RCVD AT 7/5/2005 2:56:16 PM [Pacific Daylight Time] * SVR:LAC-C-RFAX/0 * DNIS:4312625 * CSID:1+310+342+0533 * DURATION (mm-ss):04-32

Plaintiff's Summary Judgment Exhibit 85

NOVALOGIC 000049661

07/05/2005 03:02 FAX 1+310+342+0533        6th FL Executive                                   ☒006

07/05/2005  09:27   8188801998                  NOVALOGIC                           PAGE  07

11. **Ownership.** NovaLogic shall own all Intellectual Property Rights in the Licensed Properties incorporated in the Games. All right, title and interest in the Games (excluding the Licensed Properties), Underlying Technology and methods of Download, and all elements of them, including without limitation all technology and proprietary Intellectual Property Rights used on or in connection with them, shall remain the property of Licensee or its third-party licensees, as the case may be.

12. **Confidential Information.** Each party acknowledges that by reason of its relationship to the other party under this LOI it will have access to and acquire knowledge from, material, data, systems and other information concerning the operation, business, financial affairs, products, customers and intellectual property of the other party that may not be accessible or known to the general public, including, but not limited to the terms of this Agreement (referred to as "*Confidential Information*"). Each party agrees to maintain all Confidential Information received from the other, both orally and in writing, in confidence and agrees not to disclose or otherwise make available such Confidential Information to any third party without the prior written consent of the disclosing party; provided, however, that each party may disclose the financial terms of this Agreement to its legal and business advisors and to potential investors so long as such third parties agree to maintain the confidentiality of such Confidential Information. Each party further agrees to use the Confidential Information only for the purpose of evaluating the transactions contemplated hereby. The parties' obligations under this Paragraph 12 shall not apply to Confidential Information which: (i) is or becomes a matter of public knowledge though no fault of or action by the receiving party; (ii) was rightfully in the receiving party's possession prior to disclosure by the disclosing party; (iii) subsequent to disclosure, is rightfully obtained by the receiving party from a third party who is lawfully in possession of such Confidential Information without restriction; (iv) is independently developed by the receiving party without resort to the disclosing party's Confidential Information; or (v) is required by law or judicial order or stock exchange regulation, provided that prior written notice of such required disclosure is furnished to the disclosing party as soon as practicable in order to afford the disclosing party an opportunity to seek a protective order and that if such order cannot be obtained disclosure may be made without liability.

13. **No Solicitation.** Neither party will directly or indirectly solicit or encourage a then-current employee of the other party to leave his or her employment to become an employee or independent contractor of the soliciting party. Neither party will hire any person who has been employed by the other party within ninety (90) days following the termination of such employee's employment. Notwithstanding the foregoing, upon termination of this Agreement for any reason, neither party will hire any person who has been employed by the other party within one hundred eighty (180) days following such termination.

14. **Term and Termination.** The term of this Agreement is defined in Schedule A. The Definitive Agreement shall include customary provisions regarding termination of transactions of the type contemplated therein. In addition to the foregoing, either party may terminate this Agreement upon the occurrence of any of the following events: (i) either party ceases to do business; (ii) the sale of all or substantially all of the assets of either party, the merger or consolidation of either party, or other change of control of either party; or (iii) either party becomes insolvent or seeks protection under any bankruptcy, receivership, trust, deed, creditor's arrangement, or comparable proceeding, or if any such proceeding is instituted against such party and not dismissed within thirty (30) days.



6

PAGE 7/9 * RCVD AT 7/5/2005 10:31:37 AM [Pacific Daylight Time] * SVR:LAC-C-RFAX/0 * DNIS:4312625 * CSID:8188801998 * DURATION (mm-ss):04-32

PAGE 6/8 * RCVD AT 7/5/2005 2:56:16 PM [Pacific Daylight Time] * SVR:LAC-C-RFAX/0 * DNIS:4312625 * CSID:1+310+342+0533 * DURATION (mm-ss):04-32

Plaintiff's Summary Judgment Exhibit 85

NOVALOGIC 000049662

```
07/05/2005 03:02 FAX 1+310+342+0533        6th FL Executive                            ⌀007

   07/05/2005  09:27   8188801998                NOVALOGIC                   PAGE  08
```

15. **Negotiations.** The parties shall commence good faith negotiation with respect to the Definitive Agreement promptly following the execution of this LOI which Definitive Agreement shall incorporate the business terms contained herein as well as other terms contained in Licensee's standard Distribution Agreement to be negotiated in good faith within the parameters of industry custom and practice.

16. **Press Releases.** No party will issue any public statement, press release or other communication with respect to this LOI or the discussions related to the subject matter hereof, unless such public statement, press release or other communication has first been submitted to and approved in writing by the other parties.

17. **Miscellaneous.** This Agreement sets forth the entire agreement between Licensee and NovaLogic, and supersedes any and all prior agreements (whether written or oral) of NovaLogic and Licensee with respect to the subject matter set forth herein. The parties contemplate entering into the Definitive Agreement incorporating the terms hereof, however, until such Definitive Agreement is executed, the parties shall operate under the terms of this LOI. This Agreement shall be governed by and construed in accordance with the laws of the State of California, exclusive of its provisions on conflicts of laws. In respect of any dispute relating to this Agreement, such dispute shall be brought exclusively in a court of competent jurisdiction sitting in Los Angeles, California. The prevailing party shall be awarded reasonable attorney fees, expert witness costs and expenses, and all other costs and expenses incurred directly or indirectly in connection with the proceedings. Either party's failure to insist upon or enforce strict performance of any provision of this Agreement shall not be construed as a waiver of any provision or right. Neither the course of conduct between the parties nor trade practice shall act to modify any provision of this Agreement. If any provision of this Agreement shall be deemed unlawful, void, or for any reason unenforceable, then that provision shall be deemed severable from this Agreement and shall not affect the validity and enforceability of any remaining provisions.

IN WITNESS WHEREOF, the parties have caused their respective representatives, each duly authorized, to execute the duplicate originals of this LOI.

Vivendi Universal Games, Inc.                NovaLogic, Inc.

By: _____                          By: _____
Title: President NA/COO                       Title: President
Date: 7/5/05                                  Date: July 5, 2005

7

PAGE 8/9 * RCVD AT 7/5/2005 10:31:37 AM [Pacific Daylight Time] * SVR:LAC-C-RFAX/0 * DNIS:4312625 * CSID:8188801998 * DURATION (mm-ss):04-32

PAGE 7/8 * RCVD AT 7/5/2005 2:56:16 PM [Pacific Daylight Time] * SVR:LAC-C-RFAX/0 * DNIS:4312625 * CSID:1+310+342+0533 * DURATION (mm-ss):04-32

Plaintiff's Summary Judgment Exhibit 85

NOVALOGIC 000049663

07/05/2005 03:03 FAX 1+310+342+0533    6th FL Executive                    ☒008

07/05/2005 09:27   8188801998           NOVALOGIC                    PAGE 09

## SCHEDULE A

| | |
|---|---|
| Licensed Property: | All Intellectual Property Brands owned or controlled by NovaLogic, including but not limited to Delta Force, Black Hawk Down, Comanche, F-22 and Armored Fist. |
| Platform: | Wireless Devices |
| Territory: | Worldwide |
| Term: | The Term of the Agreement shall commence upon the Effective Date and shall expire upon the third anniversary of the Effective Date. |
| Term Extension | Licensee shall notify NovaLogic at least thirty (30) calendar days prior to the expiration of the Term of its intention to extend the Term for an additional one year period. NovaLogic shall have a period of fifteen (15) calendar days to either accept or reject such extension. Should NovaLogic accept the extension, the Term shall be extended for one additional year and Licensee shall have the right to create an additional Game. |
| Distribution Term | The Distribution Term for each Game shall commence on the Commercial Release of the Game and shall expire on the later of (a) the expiration of the Term, including any extension of the Term or (b) the two (2) year anniversary of the Commercial Release of the Game. |
| Advance: | $750,000.00 USD to be paid as follows:<br>1. $350,000 within one week of execution of this LOI;<br>2. $200,000 on or before June 30, 2006; and<br>3. $200,000 on or before December 31, 2006. |
| Royalty: | 30% of Licensee Revenue. |



PAGE 9/9 * RCVD AT 7/5/2005 10:31:37 AM [Pacific Daylight Time] * SVR:LAC-C-RFAX/0 * DNIS:4312625 * CSID:8188801998 * DURATION (mm-ss):04-32

PAGE 8/8 * RCVD AT 7/5/2005 2:56:16 PM [Pacific Daylight Time] * SVR:LAC-C-RFAX/0 * DNIS:4312625 * CSID:1+310+342+0533 * DURATION (mm-ss):04-32

Plaintiff's Summary Judgment Exhibit 85

NOVALOGIC 000049664