```
 1  KARIN G. PAGNANELLI (174763)
      kgp@msk.com
 2  MARC E. MAYER (190969)
      mem@msk.com
 3  GILBERT LEE (267247)
      gsl@msk.com
 4  MITCHELL SILBERBERG & KNUPP LLP
    11377 West Olympic Boulevard
 5  Los Angeles, California 90064-1683
    Telephone:  (310) 312-2000
 6  Facsimile:  (310) 312-3100

 7  Attorneys for Defendants ACTIVISION
    BLIZZARD, INC., ACTIVISION
 8  PUBLISHING, INC., VOYETRA TURTLE
    BEACH, INC., PENGUIN GROUP (USA),
 9  INC., and MICROSOFT CORPORATION
    and Counterclaimant ACTIVISION
10  PUBLISHING, INC.
```

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NOVALOGIC, INC., a California corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>ACTIVISION BLIZZARD, a Delaware corporation; ACTIVISION PUBLISHING, a Delaware corporation; VOYETRA TURTLE BEACH, INC., a New York corporation; PENGUIN GROUP (USA), INC., a Delaware corporation; MICROSOFT CORPORATION, a Washington corporation; and DOES 1 through 10,<br><br>    Defendants. | Case No. CV12-04011 JFW (SHx)<br><br>The Honorable John F. Walter<br><br>**REPLY MEMORANDUM OF DEFENDANTS ACTIVISION BLIZZARD, INC., ACTIVISION PUBLISHING, INC., AND PENGUIN GROUP (USA), INC. IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>DATE:   June 17, 2013<br>TIME:   1:30 p.m.<br>CTRM.:  16 |
| ACTIVISION PUBLISHING, INC., a Delaware corporation,<br><br>    Counterclaimant,<br><br>    v.<br><br>NOVALOGIC, INC., a California corporation,<br><br>    Counterclaim Defendant. | |

Mitchell Silberberg & Knupp LLP

5340037.9

# TABLE OF CONTENTS

**Page**

Introduction .................................................................................................................. 1

I.   ACTIVISION DID NOT "SURRENDER BY CONTRACT" ITS FIRST AMENDMENT RIGHTS ............................................................................... 2

II.  THE FIRST AMENDMENT BARS NOVALOGIC'S CLAIMS ARISING FROM MW3 AND THE MW3 GUIDE ....................................... 4

   A.   The Use Of Delta Force And The MW3 Delta Logo Is Artistically Relevant To MW3 And The MW3 Guide. ........................... 4

   B.   The Ancillary Use Of The MW3 Delta Logo Is Irrelevant. ................ 6

       1.   The Use Of The MW3 Delta Logo *Outside* MW3 And The MW3 Guide Does Not Forfeit First Amendment Protection For The Use *Inside* Those Products ............................................. 6

       2.   Whether The MW3 Logo Had Some Branding Or Promotional Relevance *In Addition To* Its Clear Artistic Relevance Is Irrelevant. ............................................................... 7

   C.   Defendants' Use Is Not Explicitly Misleading. ................................... 9

Conclusion .................................................................................................................. 12

Mitchell Silberberg & Knupp LLP

5340037.9

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

AMF Inc. v. Sleekcraft Boats,
 599 F.2d 341 (9th Cir. 1979) .......................................................................... 10, 11

Brown v. Elec. Arts, Inc.,
 2009 WL 8763151 (C.D. Cal. Sept. 23, 2009) ...................................................... 5

Campbell v. Acuff-Rose Music, Inc.,
 510 U.S. 569 (1994) .............................................................................................. 4

Curtis Pub. Co. v. Butts,
 388 U.S. 130 (1967) .............................................................................................. 3

Dillinger, LLC v. Elec. Arts Inc.,
 2011 WL 2457678 (S.D. Ind. June 16, 2011) ................................................. 8, 10

E.S.S. Entm't 2000 v. Rock Star Videos, Inc.,
 547 F.3d 1095 (9th Cir. 2008) ........................................................ 1, 5, 7, 11, 12

Eastland Music Grp., LLC v. Lionsgate Entm't, Inc.,
 707 F.3d 869 (7th Cir. 2013) ............................................................................... 12

Elec. Arts, Inc. v. Textron Inc.,
 2012 WL 3042668 (N.D. Cal. July 25, 2012) ..................................................... 12

Fortres Grand Corp. v. Warner Bros. Entm't, Inc.,
 -- F. Supp. 2d --, 2013 WL 215318, *10 (N.D. Ind. May 16, 2013) .............. 5, 10

Hoffman v. Capital Cities/ABC, Inc.,
 255 F.3d 1180 (9th Cir. 2001) ............................................................................... 9

Kirby v. Sega of Am., Inc.,
 144 Cal. App. 4th 47 (2006) ................................................................................. 6

Leonard v. Clark,
 12 F.3d 885 (9th Cir. 1993) .................................................................................. 3

Louis Vuitton Mallatier S.A. v. Warner Bros. Enm't Inc.,
 868 F. Supp. 2d 172 (S.D.N.Y. 2012) ............................................................. 8, 11

Mattel, Inc. v. MCA Records, Inc.,
 28 F. Supp. 2d 1120 (C.D. Cal. 1998) ........................................... 2, 6, 7, 8, 9, 10, 11, 12

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

No Doubt v. Activision Pub., Inc.,
　192 Cal. App. 4th 1018 (2011) ................................................................................ 4

Rebelution, LLC v. Perez,
　732 F. Supp. 2d 883 (N.D. Cal. 2010) ................................................................. 11

Rogers v. Grimaldi,
　875 F.2d 994 (2d Cir. 1989) ............................................................................ *passim*

Roxbury Entm't v. Penthouse Media Grp., Inc.,
　669 F. Supp. 2d 1170 (C.D. Cal. 2009) .............................................................. 5, 8

Seale v. Gramercy Pictures,
　949 F. Supp. 331 (E.D. Pa. 1996) .......................................................................... 7

Snepp v. United States,
　444 U.S. 507 (1980) (per curiam) ......................................................................... 3

Stewart Surfboards, Inc. v. Disney Book Grp., LLC,
　2011 U.S. Dist. LEXIS 155444 (C.D. Cal. May 11, 2011) ......................... 5, 8, 10

Toho Co., Ltd. v. William Morrow & Co., Inc.,
　33 F. Supp. 2d 1206 (C.D. Cal. 1998) ................................................................ 11

Universal Money Ctrs., Inc. v. AT&T Co.,
　22 F.3d 1527 (10th Cir. 1994) ............................................................................ 12

Winchester Mystery House, LLC v. Global Asylum, Inc.,
　210 Cal. App. 4th 579 (2012) ............................................................................... 8

**OTHER AUTHORITIES**

Merriam-Webster Online Dictionary (definition of "explicit") ............................. 10

**Introduction**

NovaLogic concedes all of the relevant facts and legal principles that support Defendants' First Amendment defense. NovaLogic necessarily concedes that MW3 and the MW3 Guide are expressive works that are protected by the First Amendment, and therefore to succeed on its claims, it must establish that the "public interest in avoiding consumer confusion *outweighs* the public interest in free expression." E.S.S. Entm't 2000 v. Rock Star Videos, Inc., 547 F.3d 1095, 1099 (9th Cir. 2008). NovaLogic further admits that Defendants' depiction of Delta Force is artistically relevant to MW3 and the MW3 Guide, and there is no evidence that these products "explicitly mislead." Perhaps most critically, NovaLogic admits (as it must) that Delta Force is a real-life Army Unit (or widely reputed to be so) and that both the MW3 Delta Logo *and* NovaLogic's logo are derived from a preexisting insignia that appears in dozens of books, magazines, movies, and games. Defendants used Delta Force and the MW3 Delta Logo in MW3 to faithfully depict the real-life Army unit. NovaLogic's claims thus are barred by Rogers v. Grimaldi, 875 F.2d 994 (2d Cir. 1989).

NovaLogic's Opposition never actually addresses the Rogers test, the First Amendment issues, or how it can claim exclusive rights in a preexisting real-life Army unit. Instead, NovaLogic dedicates the majority of its argument to the Ninth Circuit's traditional "likelihood of confusion" test while ignoring entirely the Rogers "explicitly misleading" test. NovaLogic's argument falls of its own weight. "Likelihood of confusion" is not the test under Rogers. If it were, then Rogers would be a nullity and there would be no enhanced First Amendment protection for the use of trademarks in expressive works. NovaLogic's other arguments – namely, that (1) Activision "surrendered" its First Amendment rights because in 2005 a company that it later acquired in a merger agreed to distribute mobile phone versions of NovaLogic games, and (2) Activision has lost its First Amendment right to depict the MW3 Delta Logo in MW3 and the MW3 Guide

because the Logo was *also* used on other ancillary products – also are meritless. As explained below, these arguments misconstrue both the facts and the law.

Ultimately, if NovaLogic could use its purported trademarks to prevent Defendants from depicting the Delta Force and its well-known insignia in MW3, then every historical event, organization, landmark, or symbol would become subject to a trademark land grab, with the first company to register a trademark in any of these elements "cordon[ing] off an important part of modern culture from public discourse." Mattel, Inc. v. MCA Records, Inc., 28 F. Supp. 2d 1120, 1140 (C.D. Cal. 1998) (internal quotation marks omitted). It is no different than a game publisher registering a trademark for "the Civil War," using the Confederate flag on the game cover, and then claiming that no other game publisher can depict that historical event or symbol without infringing. This is not, and cannot be, the law.

## I. ACTIVISION DID NOT "SURRENDER BY CONTRACT" ITS FIRST AMENDMENT RIGHTS.

To dodge the First Amendment altogether, NovaLogic's lead argument is that Activision "surrendered" its First Amendment rights to depict Delta Force and its insignia in any of Activision's games because in 2005, a different company (Vivendi Games, Inc.) entered into an agreement with NovaLogic to make and distribute several NovaLogic games, including Delta Force, on wireless devices (the "2005 Vivendi Contract"). As a threshold matter, Activision was a not a party to the 2005 Vivendi Contract. SUF 107. NovaLogic never explains how a third party could have surrendered or contracted away Activision's First Amendment rights years before MW3. Regardless, the argument is frivolous.

NovaLogic's basic argument – that by licensing the right to make a mobile version of NovaLogic's games (SUF 107), Activision agreed not to portray Delta Force in its own games – is not supported by the evidence. Nothing in the 2005 Vivendi Contract even arguably committed Vivendi to refrain from using "Delta Force" or any associated logo in any other games, including MW3 or the "Call of

1 Duty" series.  Nor could it, because MW3 was not released until 2011, three years
2 after the 2005 Vivendi Contract terminated.  SUF 111.  The 2005 Vivendi Contract
3 certainly did not purport to restrict Activision's depiction of the real-life Delta
4 Force and its logo.  The 2005 Vivendi Contract does not even explicitly mention
5 Delta Force except as the name of one of NovaLogic's purported "brands" (along
6 with others such as "Comanche," "Black Hawk Down," and "F-22").  SUF 108.
7 At most, the 2005 Vivendi Contract obligated Vivendi to pay NovaLogic royalties
8 for its mobile versions of NovaLogic *games* (SUF 108-109), not for every other
9 conceivable use of Delta Force or its real-life insignia in perpetuity.  Thus, the
10 2005 Vivendi Contract cannot constitute the "clear and convincing evidence that
11 the waiver is knowing, voluntary and intelligent" as is necessary to relinquish First
12 Amendment rights.  Leonard v. Clark, 12 F.3d 885, 889 (9th Cir. 1993); Curtis
13 Pub. Co. v. Butts, 388 U.S. 130, 145 (1967) (courts are "unwilling to find waiver
14 in circumstances which fall short of being clear and compelling").

15      NovaLogic's "surrender" argument also is not supported (and in fact is
16 contradicted) by the caselaw.  In both Snepp v. United States, 444 U.S. 507, 514-
17 15 (1980) (per curiam) and Leonard, 12 F.3d at 891-92, the defendants clearly and
18 voluntarily contracted to refrain from certain specific activities – *i.e.*, an ex-CIA
19 agent publishing classified information (Snepp) or a union endorsing certain
20 legislation (Leonard) – and were sued for breaching those contracts.  The courts
21 enforced these contracts, finding that even if they limited the defendants' exercise
22 of certain First Amendment rights, the defendants had knowingly surrendered
23 those rights by contract.  That is not the case here.  NovaLogic has never claimed
24 that Activision or Vivendi breached or otherwise exceeded the scope of the 2005
25 Vivendi Contract by using Delta Force and the MW3 Delta Logo in MW3.  Nor
26 could any plausible reading of the 2005 Vivendi Contract include a surrender of
27 rights to depict Delta Force or its insignia without NovaLogic's consent in any
28 games other than the mobile versions of NovaLogic's games.  SUF 107-109.

Likewise, in No Doubt v. Activision Publishing, Inc., 192 Cal. App. 4th 1018 (2011), the parties (unlike here) licensed the use of the plaintiffs' likenesses in the *specific game at issue* ("Band Hero"). The plaintiff claimed that Activision infringed its members' publicity rights (not trademark rights) by using the band members' likenesses in a way not contemplated by the license. Id. at 1022. The plaintiff never argued that Activision had more broadly waived its First Amendment rights with respect to all uses of plaintiffs' likenesses; its argument was that by licensing some uses *within* "Band Hero," Activision could not simultaneously claim that a license was not required for other uses within that game. That is in stark contrast to the situation here, where (as NovaLogic admits) the contract did not cover or contemplate the use at issue in the first instance. See Opp. at 13 ("While the agreement gave No Doubt the right to approve Activision's use of [No Doubt's likenesses], NovaLogic had no such agreement."). In any event, the No Doubt court never reached the issue of waiver, see id. at 1035 n.7, and instead fully considered Activision's First Amendment defense.[1]

## II. THE FIRST AMENDMENT BARS NOVALOGIC'S CLAIMS ARISING FROM MW3 AND THE MW3 GUIDE.

NovaLogic concedes that, absent some "surrender" of First Amendment rights, Rogers' two-part test applies, and thus, if the use has "above zero" artistic relevance, NovaLogic must prove that the use is "explicitly misleading." NovaLogic's own admissions confirm that both Rogers prongs are met here.

### A. The Use Of Delta Force And The MW3 Delta Logo Is Artistically Relevant To MW3 And The MW3 Guide.

NovaLogic admits that the depiction of Delta Force and the MW3 Delta

---

[1] Contrary to NovaLogic's assertion, by virtue of Vivendi's entry into the 2005 Contract, Activision did not concede or "understand[] that the First Amendment did not afford any protection for Activision's use of the Marks." Opp. at 12. Prior licensing activity is never an admission that a license is *required*. See Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 585 n.18 (1994) (rejecting argument that a "request for permission to use the original should be weighed against a finding of fair use…. [T]he offer may simply have been made in a good-faith effort to avoid this litigation. If the use is otherwise fair, then no permission need be sought….").

Mitchell Silberberg & Knupp LLP

5340037.9

4

1 Logo far exceeds the "above zero" threshold required by Rogers and E.S.S. In
2 fact, NovaLogic does not dispute that the use is directly relevant to MW3's story
3 and purpose, and that a convincing depiction of the Delta Force requires the use of
4 its well-known logo and name. See SUF 57-68. That is also why NovaLogic used
5 Delta Force and its logo in its own games. See SUF 35 ("Delta Force" advertised
6 as allowing players to "feel as if they are actual members of Delta Force").

7 NovaLogic's suggestion (and that of its purported expert[2]) that a use must be
8 "incidental" to be artistically relevant (Opp. at 15) is wrong. The only time that
9 courts have specifically addressed "incidental" uses is in finding that minor uses do
10 not weigh *against* finding artistic relevance. See Stewart Surfboards, Inc. v.
11 Disney Book Grp., LLC, 2011 U.S. Dist. LEXIS 155444, at *19 (C.D. Cal. May
12 11, 2011) (First Amendment "should not turn on how valuable or necessary a court
13 judges the use of a particular artistic device"). Likewise, no case ever has held that
14 a use must be parody to be protected. If that were so, then creators would lose
15 protection for realistic depictions. See Brown v. Elec. Arts, Inc., 2009 WL
16 8763151, *4 (C.D. Cal. Sept. 23, 2009) ("That the designers used a realistic sports
17 theme … does not change the fact that the Madden NFL games manifest their
18 designers' creative vision."). Many First Amendment cases, including Rogers,
19 have concerned overtly non-parodic uses. See Fortres Grand Corp. v. Warner
20 Bros. Entm't, Inc., -- F. Supp. 2d --, 2013 WL 215318, *10 (N.D. Ind. May 16,
21 2013) ("Rogers of course does apply to parody, but why should it be limited to
22 that?").[3]

---

[2] NovaLogic's expert, Russell Winer, surprisingly states "the defendant claims that the Logo has **no artistic relevance to MW3 whatsoever**." Winer Decl. ¶ 13. It is not clear if this is a typographical error or if Winer misunderstood Defendants' argument. In any event, Winer never specifies whether he ever played MW3 or reviewed any MW3 in-game footage (see id. ¶ 42) and does not disclose that he ever reviewed the Army Logo or was informed that it predates NovaLogic's game. Thus, Winer cannot, and does not, contest the artistic relevance of the MW3 Logo.

[3] Contrary to NovaLogic's claim, the defendant in Roxbury Entertainment v. Penthouse Media Group, Inc., 669 F. Supp. 2d 1170 (C.D. Cal. 2009) never claimed that the "Route 66" title was a parody, and no case ever has held that pornography is a "uniquely protected form of parody." Opp. at 15.

### B. The Ancillary Use Of The MW3 Delta Logo Is Irrelevant.

NovaLogic's only other argument addressing the Rogers test is that Defendants' forfeited their First Amendment right to depict Delta Force and its logo because portions of the MW3 Logo were used on two ancillary products – namely, the Microsoft XBox 360 Console and the Turtle Beach Headsets. NovaLogic's theory is unsupported and contrary to well-established law.

#### 1. The Use Of The MW3 Delta Logo *Outside* MW3 And The MW3 Guide Does Not Forfeit First Amendment Protection For The Use *Inside* Those Products.

NovaLogic admits that the MW3 Delta Logo was never used on any packaging or advertising for MW3 or the MW3 Guide. SUF 78, 87, 89. The only use of the MW3 Delta Logo in any manner other than within the body of these works is portions of it on the Console and Headsets. Even assuming, *arguendo*, that this use was for "cross-branding,"[4] NovaLogic does not cite any authority, and none exists, to support its novel theory that any alleged use of the MW3 Delta Logo *outside* MW3 and the MW3 Guide forfeits (let alone has any relevance to) Defendants' First Amendment right to use the Logo *inside* the game and guide. To the contrary, courts consistently hold that First Amendment protection for expressive uses does not rise or fall because of *other*, non-expressive uses, even promotional or outright commercial ones. Kirby v. Sega of Am., Inc., 144 Cal. App. 4th 47, 52 (2006) (First Amendment applies to video game even where "[s]everal promotional products are associated with the game" including a strategy guide, lunch box, and Hot Wheels car); Mattel, 296 F.3d at 899 (First Amendment applies where "[d]efendants entered into cross-licensing agreements and developed

---

[4] NovaLogic's claim that the MW3 Delta Logo was the "primary tool" used to market and brand MW3 (Opp. at 20) is unsupported, and in fact is contradicted by the evidence. If that were true, then the MW3 Delta Logo would appear on the game's packaging, in advertisements, or on the cover of the MW3 Guide. But the *only place* that the MW3 Delta Logo appears, other than within the body of MW3 and its Guide, is a version of it on the Console and Headsets. The few e-mails cited by NovaLogic reflect product design decisions for these two products, not that the MW3 Delta Logo was at the "forefront" of efforts to market *MW3* to consumers. Opp. at 15.

1  a coordinated plan to distribute [the] promotional copies of the Barbie Girl single
2  and the *Aquarium* album"); Seale v. Gramercy Pictures, 949 F. Supp. 331, 340
3  (E.D. Pa. 1996) (factual issues as to whether a promotional use fell within Rogers
4  did not impact Rogers' application to the related use inside the book at issue).[5]

5  NovaLogic's assertion that Activision's license agreements with the other
6  Defendants implicitly waived its First Amendment rights also is without merit.
7  The argument initially fails because none of these license agreements mentions the
8  MW3 Delta Logo, far less "feature[s] [the MW3 Delta Logo] at the center."  Opp.
9  at 15.  They are licenses for MW3 and its assets and artwork, not Delta Force.
10 SUF 115, 120, 125.  But even if the license agreements were read to include the
11 MW3 Delta Logo as licensed MW3 "Marks" or "Assets," NovaLogic's argument
12 fails because, as NovaLogic concedes, the MW3 Delta Logo reflects original
13 design elements that distinguish it from the design "that is out in the wild."  SUF
14 67, 68, 137.  Activision was entitled to license those elements without sacrificing
15 its right to depict those elements of the logo "in the wild" that predate the MW3
16 Logo (and NovaLogic's logo).

### 2. Whether The MW3 Logo Had Some Branding Or Promotional Relevance *In Addition To* Its Clear Artistic Relevance Is Irrelevant.

19 NovaLogic also apparently claims that because a version of the MW3 Delta
20 Logo was used on the Console and Headsets for branding purposes, its use in
21 MW3 and the MW3 Guide was not "***merely*** for artistic expression."  Opp. at 14
22 (emphasis added).  NovaLogic's argument turns Rogers on its head: artistic
23 relevance must "'merely be ***above zero***,'" not 100%.  E.S.S., 547 F.3d at 1100
24 (quoting Rogers, 875 F.2d at 999) (emphasis added).  No case has held that to
25 qualify for First Amendment protection the use cannot also serve to draw
26 consumers to the product.  The law is exactly the opposite.  In Rogers, Mattel, and

---

[5] Whether the independent use of the MW3 Delta Logo on the licensed consumer products might hypothetically ***separately*** confuse consumers is not at issue in this Motion, which addresses only MW3 and the MW3 Guide.

Mitchell Silberberg & Knupp LLP
5340037.9

7

1  Roxbury Ent. v. Penthouse Media Group, 669 F. Supp. 2d 1170 (C.D. Cal. 2009),
2  the alleged use was overtly promotional because it was in the *title* of the respective
3  works (as well as in posters, album covers, and DVD boxes):  "Titles, like the
4  artistic works they identify, are of a hybrid nature, combining artistic expression
5  and commercial promotion," and even can serve "as a significant means of
6  marketing the film to the public" without eliminating First Amendment protection.
7  Rogers, 875 F.2d at 998; see Mattel, 296 F.3d at 902 ("A title is designed to catch
8  the eye and to promote the value of the underlying work.").

9  In fact, as long as some artistic relevance exists (as here), even a defendant's
10 intent to use the trademark for promotional purposes (which is not present here)
11 does not forfeit First Amendment protection or trump artistic relevance.  Thus, in
12 Mattel, the court dismissed the plaintiff's claim on First Amendment grounds, even
13 though the defendant undisputedly used the "Barbie" trademark to "create[] and
14 s[ell] to consumers in the marketplace commercial products … that bear the Barbie
15 mark."  Id. at 906.  In Winchester Mystery House, LLC v. Global Asylum, Inc.,
16 210 Cal. App. 4th 579, 591 (2012), there was no "triable issue of material fact,"
17 even though the use of the defendant's trademark may well have been "'merely a
18 crass marketing tool,' not an artistic decision based upon the [product's] subject
19 matter…."  In Rogers, there was even evidence that the defendants were "gathering
20 old photographs of Rogers" for "use in an advertising campaign."  875 F.2d at 997.

21 Many other cases have come to the same conclusion, in a variety of
22 marketing and promotional contexts.  See, e.g., Dillinger, LLC v. Elec. Arts Inc.,
23 2011 WL 2457678, at *7 (S.D. Ind. June 16, 2011) (evidence of "press releases
24 posted to EA's website list[ing] the Modern Dillinger first among all the
25 weapons"); Louis Vuitton Mallatier S.A. v. Warner Bros. Enm't Inc., 868 F. Supp.
26 2d 172, 175 (S.D.N.Y. 2012) (handbag was shown in advertisements and trailers
27 for "Hangover II"); Stewart, 2011 U.S. Dist. LEXIS 155444, at *2 (use of
28 trademark on the back cover of the defendant's book was for the alleged purpose

of "trad[ing] upon" plaintiff's goodwill).  NovaLogic's claim is even more attenuated, because the only use of the MW3 Delta Logo on or in MW3 and the MW3 Guide was within the body of these works.  The MW3 Delta Logo was never used on MW3's packaging, in advertisements for the game, or in its title.  SUF 78, 87, 89.  It also was never used without the "MW3" name and logo in proximity.

Finally, that some consumers might be drawn to the product because of the appeal of playing as a Delta Force soldier, or because they think the MW3 Delta Logo is "'cool'" (Opp. at 6), is irrelevant.  See Hoffman v. Capital Cities/ABC, Inc., 255 F.3d 1180, 1186 (9th Cir. 2001) ("A printed article meant to draw attention [in a] for-profit magazine … does not fall outside of the protection of the First Amendment because it may help to sell copies.").  Otherwise, courts would be required to make wholly subjective determinations as to whether an expressive use of a trademark is solely aesthetic or might also have some consumer appeal.  If a use were to lose its protection merely because it draws customer attention, then no book or album cover, game package, or movie poster would ever be protected.[6]

### C. Defendants' Use Is Not Explicitly Misleading.

NovaLogic never explains in what conceivably "explicitly misleading" conduct Defendants engaged, and there is none.  As Novalogic concedes, Defendants never once refer to NovaLogic or its video game franchise in connection with MW3, explicitly or otherwise.  SUF 77.  That is true not only of MW3 and the MW3 Guide, but of *all* of Defendants' products, including the Console and Headset.  This alone ends the inquiry.  See, e.g., Mattel, 296 F.3d at 902 (the song "does not, explicitly or otherwise, suggest that it was produced by Mattel"); Rogers, 875 F.2d at 999 (examples of "explicit" endorsement are "an

---

[6] Contrary to NovaLogic's suggestion, the fact that "artistic relevance" does not require that the use be *exclusively* or "merely artistic" (Opp. at 7) does not defeat the purposes of the Lanham Act.  To the extent that NovaLogic claims that any promotional materials misled, "duped," or deliberately confused potential customers, that is properly addressed to the "explicitly misleading" prong (discussed, infra), not the "artistic relevance" prong.

9

1  authorized biography" or "Jane Fonda's Workout"); Stewart, 2011 U.S. Dist.
2  LEXIS 155444, at *21 ("A work is 'explicitly misleading' only if it contains an
3  'explicit indication,' 'overt claim,' or 'explicit misstatement...."); Dillinger, 2011
4  WL 2457678, at *8 ("Plaintiff points to no *explicit* misrepresentation – that fact
5  alone is dispositive of this issue."); Fortres, 2013 WL 2156318, at *9 (similar). [7]

6  Moreover, while NovaLogic (ignoring its burden of proof) disingenuously
7  claims that Defendants have not "one shred of evidence" that their products are
8  "*not* explicitly misleading" (Opp. at 24), it *also* admits all of the ways that
9  Defendants' products overtly distance themselves from NovaLogic.  Each
10 prominently displays the ACTIVISION name and logo.  SUF 80, 89.  Each uses a
11 variant of the preexisting Army Logo that is different from NovaLogic's logo.
12 SUF 68, 85-86.  Each identifies itself as tied to Activision's well-known "Call of
13 Duty" franchise.  SUF 80, 89.  Each uses a color scheme (black, green and white)
14 and images identified only with MW3.  SUF 80, 89.  See Stewart, 2011 U.S. Dist.
15 LEXIS 155444, at *26 ("[T]he book jacket and spine include the Disney logo, the
16 'Disney Press' logo, and the Disney channel logo.").  Finally, and most dispositive,
17 NovaLogic unequivocally admits that Defendants' reference to Delta Force and
18 depiction of the MW3 Delta Logo is to evoke the actual Army unit, not
19 NovaLogic.  SUF 64, 67, 77-79, 88.

20 Rather than address the second, "explicitly misleading" prong of Rogers,
21 NovaLogic, without explanation, substitutes the traditional "likelihood of
22 confusion" test of AMF Inc. v. Sleekcraft Boats, 599 F.2d 341 (9th Cir. 1979).
23 NovaLogic's attempt to intermingle Rogers and Sleekcraft is directly contrary to
24 Ninth Circuit law.  See Mattel, 296 F.3d at 900 ("[A]pplying the traditional test

---

[7] NovaLogic's claim that no case in the Ninth Circuit has interpreted "explicitly misleading" to require an overt statement is wrong.  See Stewart, 2011 U.S. Dist. LEXIS 155444, at *25-*26.  No other interpretation of the legal standard is consistent with its language.  See Merriam-Webster Online Dictionary (primary definition of "explicit" as "fully revealed or expressed without vagueness, implication, or ambiguity"), http://www.merriam-webster.com/dictionary/explicit.

Mitchell
Silberberg &
Knupp LLP

5340037.9

10

fails to account for the full weight of the public's interest in free expression.").[8] The approach suggested by NovaLogic would wholly eviscerate the Rogers test and give no weight to the public interest in free expression. To the contrary, Rogers presupposes some degree of potential confusion, only to hold that "the slight risk that such use" might "implicitly suggest endorsement or sponsorship to some people is outweighed by the danger of restricting artistic expression, and the Lanham Act is not applicable." Rogers, 875 F.2d at 1001; see also Louis Vuitton, 868 F. Supp. 2d at 184 ("Even assuming, *arguendo*, that Louis Vuitton could state a cognizable claim of confusion, Warner Bros' use … is protected under Rogers because" it "is not explicitly misleading."). It is for that reason that at least since Mattel, no court in this Circuit has interpreted "explicitly misleading" as coextensive with the Sleekcraft test. Sleekcraft applies only *after* the use has been found to be explicitly misleading or lacking in artistic relevance.[9]

Because NovaLogic can point to nothing in MW3, the MW3 Guide, or any other MW3-related product that is explicitly misleading, its extensive discussion of the Sleekcraft factors – as well as its purported "confusion" evidence[10] – misses the

---

[8] NovaLogic cites a footnote in Rogers for the proposition that "confusingly similar" uses are not protected by the First Amendment. However, NovaLogic miscites the footnote, which states only that "*misleading titles* that are confusingly similar to other titles" may be actionable. 875 F.2d at 999 n.5 (emphasis added).

[9] Rebelution, LLC v. Perez, 732 F. Supp. 2d 883 (N.D. Cal. 2010) and Toho Co., Ltd. v. William Morrow & Co., Inc., 33 F. Supp. 2d 1206 (C.D. Cal. 1998) are not to the contrary. In Rebelution, the court applied Sleekcraft only *after* it found that Rogers did not apply, ostensibly because the phrase "Rebelution" had not acquired "cultural significance." 732 F. Supp. 2d at 888. Even adopting Judge Patel's "cultural significance" requirement (which is inconsistent with E.S.S.), Delta Force has indisputably acquired such significance. See SUF 1-20. Likewise, in Toho (decided before E.S.S.), Sleekcraft was applied only after the Court determined that the use – namely, the title "Godzilla!" in the plaintiff's distinctive lettering style – was an explicitly misleading title. 33 F. Supp. 2d at 1212 (quoting Rogers, 875 F.2d at 999 n.5); see also n.8, supra.

[10] NovaLogic purports to offer "consumer confusion" evidence, much of which is not attached to their declarations (see SUF 167-69, 174-76), leaving only two YouTube videos. The videos (which depict NovaLogic's logo while the filmmaker discusses MW3's Delta Force) prove only that members of the public are (understandably) unable to differentiate between NovaLogic's logo and the nearly identical preexisting *Army Logo*. See SUF 170-73. If this is confusion at all, it is

point. See, e.g., Rogers, 875 F.2d at 1001 (survey evidence was irrelevant, even though it "indicates at most that some members of the public would draw the incorrect inference that Rogers had some involvement with the film"). As in Rogers, E.S.S. and Mattel, "the *only* indication that [NovaLogic] might be associated with the [work] is the use of the [trademark at issue]." Mattel, 296 F.3d at 902. That is legally insufficient under *any* interpretation of the "explicitly misleading" test, even where the trademark has no other meaning but to signify the *plaintiff's* brand. E.S.S., 547 F.3d at 1100 ("[M]ere use of a trademark alone cannot suffice to make such use explicitly misleading."). It is particularly insufficient where, as here, the mark at issue has a wholly independent and preexisting meaning. See, e.g., Eastland Music Grp., LLC v. Lionsgate Entm't, Inc., 707 F.3d 869, 871 (7th Cir. 2013) (rejecting trademark claim for "PHIFTY-50" because "[t]he phrase 50/50 or a sound-alike variant … has been in use as the title of intellectual property for a long time").[11]

## Conclusion

For the foregoing reasons, the Motion should be granted.

DATED: June 3, 2013           MITCHELL SILBERBERG & KNUPP LLP


By: __/s/ Marc E. Mayer_____
       Attorneys for Defendants

---

"*de minimis*," not linked to any potential or actual effect on purchasing decisions. Universal Money Ctrs., Inc. v. AT&T Co., 22 F.3d 1527, 1535 (10th Cir. 1994).

[11] In Electronic Arts, Inc. v. Textron Inc., 2012 WL 3042668, at *4 (N.D. Cal. July 25, 2012), the court denied EA's motion to dismiss because Bell Helicopter had sufficiently *alleged* that the use was "explicitly misleading," including because EA's allegations "collectively support an inference that *Battlefield 3* and its advertising are misleading as to source or content" (id. at *3) and that "the game explicitly leads consumers to believe [Bell] is 'somehow behind' or 'sponsors' *Battlefield 3*" (id. at *4). Nothing in MW3 explicitly leads consumers to believe that NovaLogic might be affiliated with MW3. More critically, unlike *Battlefield 3* and its packaging, which explicitly contains images and names of Bell helicopters, MW3's depiction of Delta Force is to the real-world unit, not to NovaLogic.

12